FORTY-FIFTH STREET REALTY COMPANY, Plaintiff, *v.* 17–19 WEST FORTY-FIFTH STREET CORPORATION, Defendant.

Municipal Court of New York, Borough of Manhattan, Third District, December 22, 1931.

*Harold Mortimer Brown,* for the plaintiff.

*Edwards, Murphy & Minton,* for the defendant.

CHILVERS, J. The facts were stipulated in lieu of trial.

The defendant owned a building on West Forty-fifth street, Manhattan. The plaintiff had a long-term lease on the premises adjoining. An agreement was made between them in January, 1930, by which the plaintiff promised to refrain from making improvements to the building on its premises which would affect the windows on the side of the defendant's building which faced the plaintiff's, in consideration of which the defendant promised to pay a " yearly rental " of $800, payable in quarterly installments. The contract was to run for three years. On April 1, 1930, an installment of $200 became due under the agreement. On that day, however, warrant was issued dispossessing the plaintiff from the premises for non-payment of rent, which a jury found to be an amount of over $2,000. The plaintiff, nevertheless, claims that it is entitled to the $200 installment which became due on that day. In May the defendant paid the plaintiff $66.67 as payment " for the month of April." This action is for the balance of $133.33. The defendant not only resists the claim, but also says that it is entitled to the return of the $66.67. It also counterclaims for an additional $1,000 which it had paid under the contract, because it says that the agreement was invalid *ab initio* by reason of the dispossession of the plaintiff that made performance impossible after April first.

The plaintiff contends that, even though it has been dispossessed, it is still refraining from making additions to that building as it had promised, and that, if the agreement was to be at an end when it ceased to be the lessee, a provision to that effect should have been put into the contract. Counsel collates the cases in an excellent brief on the point to show that his client cannot be charged, in the absence of express stipulation in the contract, with the impossibility of future performance.

If performance is not naturally impossible at the time of the making of a contract, the party that has promised it will not be excused on his showing that it has since then become impossible. That has been the rule since the early days of the common law. The one seeking to be relieved by reason of the impossibility should have provided for the contingency. A promisor not only undertakes that the thing will be done, but that the promisee may rely on

its being accomplished. The integrity and sanctity of contracts demand this. But here there is no question of the impossibility of a performance. to which the plaintiff is sought to be held. It is just as possible for the plaintiff now to refrain from building on the premises as it was before. More so.

The problem is rather in the application of the rule which absolves the parties from a contract on the destruction of the peculiar individual subject out of which the performance is to emanate. An agreement for personal services is made for a period of years; one of the parties dies; both are absolved; performance was to emanate from the individual person who ceased to exist. Originally it was the death of the servant only that absolved the parties from the contract, but thereafter the rule was extended in justice to absolve the parties if the master also ceased to exist. A person is to be paid for his services over a period of time a certain percentage of the profits of the business in which he is engaged; the business is stopped by a decree of the court, so that it is no longer a going concern; the contract is at an end. In these instances there was possibility of performance at the inception of the agreement; impossibility of further performance alone would not have excused either party, because provision for that contingency was not made in the contract. But the performance was to emanate out of the characteristically individual subject — the person in the one instance and the business in the other. The contract loses its life the moment the characteristically individual subject, out of which only it is to be performed on either side, ceases to exist in fact or in law. Its continuance is read into every contract where such subject exists. For the same reason a contract for the performance of a legal act which has, by statute or judgment, been declared illegal, ceases to be effective. All action cognizable in the law has legal sanction; the moment this legal sanction is withdrawn and the doing of the act would thereafter become illegal, the basic subject-matter of every agreement — lawful, sanctioned conduct — is destroyed, and both parties are absolved.

The contract in our case was between two neighbors — dominant on one side and servient on the other. The plaintiff, in effect, promised that the defendant would have unobstructed passage over the plaintiff's land for light and air. The contention of the plaintiff is unthinkable when it says that it can still refrain and is refraining from building up against the defendant's wall, and is, therefore, carrying out the conditions on its part to be performed. This agreement is pregnant with the servitude for light and air, and a servitude cannot exist except by the one in possession of land. The servitude could no longer be given, performance no longer

had its subject to emanate from, when the plaintiff was dispossessed from the premises. The continued existence of the control of the premises by the plaintiff, so that the easement could flow, was an essential condition of the continuing life of the contract. It was destroyed when the warrant issued, just as the subject-matter was destroyed when the decree was entered in *Lorillard* v. *Clyde* (142 N. Y. 456) enjoining the further continuance of the business out of which the profits were to be paid.

The contract here came to an end, therefore, on April 1, 1931. On that very day, to be sure, an installment of $200 became payable. The promise to pay was independent of the plaintiff's promise to refrain from building so long as the contract was in effect, and it is possible that immediately on the commencement of that day that sum became due, prior to the issuance of the warrant at a later hour. But the law does not take cognizance of fractions of days. The defendant had all day to pay that money. Before the expiration of the day the contract was at an end. The plaintiff cannot, therefore, recover. The defendant cannot recover on its counterclaim for the sums paid while the contract was in force up to April first, because the agreement until then was valid. Nor can it recover here the $66.67 that it paid for the month of April. Whether this payment was made under mutual mistake of fact that would entitle it to a return in a court having equity jurisdiction, or whether, as is more probable, it was paid under mistake of law which would not entitle it to a recovery anywhere, there is no showing of any ground upon which I can allow it.

Judgment is, therefore, directed dismissing the complaint and counterclaim on the merits.