MARJORIE J. NICHOLS, Appellant, v. CHARLES W. NICHOLS, JR., Respondent.

Argued January 14, 1954; decided April 8, 1954.

*Thomas I. Sheridan* and *M. Claiborne Mebel* for appellant. I. The agreement of the parties is clear and unambiguous in its terms, and it provides for no allocation of payments as between plaintiff and the children of the parties. (*Matter of Herzog,* 301 N. Y. 127.) II. Modification of the agreement can, by its terms, be effected only by means of a writing signed by both parties, and not by defendant alone, or by judicial action. (*Goldman* v. *Goldman,* 282 N. Y. 296; *Holahan* v. *Holahan,* 191 Misc. 47; *Matter of Denison,* 255 App. Div. 294; *Carlson* v. *Carlson,* 269 App. Div. 21; *Cogswell* v. *Cogswell,* 130 Misc. 541; *Harwood* v. *Harwood,* 182 Misc. 130, 268 App. Div. 974; *Johnson* v. *Johnson,* 206 N. Y. 561; *Raner* v. *Goldberg,* 244 N. Y. 438; *Matter of Herzog,* 301 N. Y. 127.) III. The statutory right of taxing authorities to spell out an allocation of payments as between a wife and children, for tax purposes, has no bearing upon the contractual treatment of such payments, or upon the obligations of the parties with respect to such payments, as between themselves. (*Krell* v. *Krell,* 192 Misc. 1, 274 App. Div. 972.) IV. The agreement was ratified, confirmed and approved by a decree of divorce granted by a competent Nevada court, and the courts of the State of New York are without power to modify that decree. (*Toms* v. *Toms,* 188 Misc. 451; *Smith* v. *Smith,* 255 App. Div. 652; *Barber* v. *Barber,* 21 How. [U. S.] 582; *Lynde* v. *Lynde,* 162 N. Y. 405, 181 U. S. 183; *Van Horn* v. *Van Horn,* 196 App. Div. 472; *Rehill* v. *Rehill,* 281 App. Div. 855, 306 N. Y. 126; *Hoyt* v. *Hoyt,* 276 App. Div. 995, 301 N. Y. 589; *Schacht* v. *Schacht,* 295 N. Y. 439; *Fry* v. *Fry,* 279 App. Div. 122, 304 N. Y. 889.) V. Defendant's tax liability has not been " finally determined," and defendant's counterclaim should therefore be dismissed.

*Eugene A. Sherpick* and *William C. Woodson* for respondent. I. Plaintiff was not entitled to receive the payments provided for the support and maintenance of the children after she

ceased to have custody of the children and was no longer providing for their support and maintenance. (*Matter of Herzog,* 301 N. Y. 127; *Canadian Ind. Alcohol Co.* v. *Dunbar Molasses Co.,* 258 N. Y. 194; *Lorillard* v. *Clyde,* 142 N. Y. 456; *Dexter* v. *Norton,* 47 N. Y. 62; *Dolan* v. *Rodgers,* 149 N. Y. 489; *Wilson Sullivan Co.* v. *International Paper Makers Realty Corp.,* 282 App. Div. 800; *Marks Realty Co.* v. *Hotel Hermitage Co.,* 170 App. Div. 484; *Cogswell* v. *Cogswell,* 130 Misc. 541; *Harwood* v. *Harwood,* 182 Misc. 130, 268 App. Div. 974; *Rehill* v. *Rehill,* 306 N. Y. 126.) II. Having actually received the benefit of the deduction or omission from her gross income for income tax purposes of the payments received by her for the children's support, plaintiff is liable to defendant under the separation agreement for such income tax savings.

DESMOND, J. We cannot concur in so much of the judgment appealed from as reduces the monthly alimony made payable to plaintiff by a separation agreement between the parties, as confirmed by a Nevada divorce decree obtained by plaintiff against defendant.

Plaintiff and defendant were married in 1934, had three children born in 1935, 1937 and 1938, respectively, separated in September, 1945, and in October, 1946, executed a separation agreement which was " ratified, confirmed and approved " by the terms of a decree of absolute divorce obtained by plaintiff against defendant in Nevada in December, 1946. This suit is brought to recover alleged arrearages of support money provided for in that separation agreement, for the months from August, 1950, to August, 1951, both inclusive. The defense bases itself on the fact that, in August, 1950, defendant (over the opposition and protest of plaintiff) took over the custody of the children who, previously and under the terms of the agreement and decree, had lived with their mother, and on the further fact that in March, 1951, a habeas corpus proceeding brought by the wife to get the children back, resulted in an order awarding their custody to their father (defendant here) subject to rights of visitation by plaintiff and to a right given her by the habeas corpus order " to have any child with her at such times and during such periods as may be mutually agreeable to relator [plaintiff here] and to such child ". All three children have

lived with their father since he, as the Trial Justice here put it, made in August, 1950, '' a unilateral change in the arrangement '' as to the custody. The record shows that the mother has at all times been ready and willing to resume custody of the children, and, in fact, she brought the habeas corpus proceeding for that purpose. There is no showing or claim of any unfitness of the mother to care for her children; the opinion in the habeas corpus proceeding merely found, without further specification, '' that the happiness, welfare and best interests of the children will be served if their custody, at least for the present, is awarded to the father ''.

There is, therefore, no basis whatever on this record for any defense (and none is put forward) that any unfitness of the wife has made it impossible for her to care for her children, as provided for in the separation agreement and in the Nevada decree. Nor is there any pleading, proof or finding that she has in any manner breached the separation agreement, as to care of the children. The children are with their father because he refused to return them to the mother, and because the habeas corpus order directed that he keep them. The sole defense of defendant (except for a counterclaim dealing with a separate income tax matter to which we will later refer herein) as against this common-law suit for balances due under the specific promises of the agreement, is his theory that the agreement should be so construed as to reduce the alimony payments, in the situation that has developed. We turn now to that agreement.

The lengthy, elaborate and carefully drawn separation contract has this, and this only, to say as to alimony:

'' THIRD: For the support and maintenance of the wife and for the support, education and maintenance of the children the husband agrees to make the following payments to the wife:

'' (a) $125,000 in cash upon the delivery of this agreement.

'' (b) Until the death of the husband or the death or the remarriage of the wife, whichever may first occur, the sum of $2,500 per month on or before the first day of each month.

'' (c) In the event of the remarriage of the wife, the amount of said monthly payments shall be reduced at the rate of $15,000 per year.

" (d) Upon the death or its attaining the age of 25 years, whichever may first occur, of any child, the amount of the monthly payments then being made by the husband shall be reduced at the rate of $5,000 per year in respect to each such child. Provided, however, that if after its attaining the age of 21 years, any child shall not be making its permanent home with the wife, such payments shall also be so reduced for so long as such situation continues and in such event, the husband shall make monthly payments at the rate of $5,000 per year directly to such child until such child returns to the wife's home or attains the age of 25 years."

That seems plain enough. The husband, until his death or the death or remarriage of the wife, is to pay to the wife " For the support and maintenance of the wife and for the support, education and maintenance of the children ", the sum of $2,500 per month. There is no allocation (as there was, for instance, in *Matter of Herzog,* 301 N. Y. 127) of a specific monthly amount for the children, or for each child, or a specific amount for the wife. The $2,500 per month is a single, undivided amount. Furthermore, the agreement (*supra*) lists categorically the situations in which the monthly $2,500 is to be reduced, that is, first, on the remarriage of the wife, second, on the death or attainment of the age of twenty-five years by any child, or third, in the event of the living apart from the mother, after reaching twenty-one and before reaching twenty-five years, of any child. Not only does that careful listing of exceptions fail to provide for any reduction under the facts as they now are, but it shows that the parties actually had in mind that one or more children might at some time be living apart from the mother. So realizing, they provided for a reduction of the alimony at the rate of $5,000 per year for any such child, if he or she should reside apart from the mother's home while that child was between the ages of twenty-one and twenty-five years. At the time the father took these three children, in August, 1950, they were eleven, twelve and fourteen years of age, respectively. How can the courts say that the monthly payment is to be reduced because the children are with their father when the agreement itself lists all the eventualities in which there is to be a reduction, and omits the one that has occurred? The agreement

itself in terms destroys this defense since it provides for a reduction as to a child living apart from its mother when the child is between twenty-one and twenty-five years of age, only. It is not only the language but the sense of this agreement that, so long as the father is alive and the mother is alive and unmarried, and the children are alive and under twenty-one years of age, the monthly payment shall be $2,500 per month, no more and no less.

The first and best rule of construction of every contract, and the only rule we need here, is that, when the terms of a written contract are clear and unambiguous, the intent of the parties must be found therein (*Hartigan* v. *Casualty Co. of America*, 227 N. Y. 175, 179; *Brainard* v. *New York Central R. R. Co.*, 242 N. Y. 125, 133). The applicability, to separation agreements, of that fundamental rule, has been affirmed by this court on several occasions (*Galusha* v. *Galusha*, 116 N. Y. 635, 646; *Stoddard* v. *Stoddard*, 227 N. Y. 13; *Goldman* v. *Goldman*, 282 N. Y. 296; *Schmelzel* v. *Schmelzel*, 287 N. Y. 21).

The trial court herein, conceding that the father could not lessen his debt by taking the children away from their mother, thought, however, that the separation agreement necessarily implied " that if the arrangement for custody were later changed by a court, the obligation of the husband to pay the wife for the support of the child would be altered accordingly ". The alimony was, accordingly, reduced from $2,500 to $1,250 per month beginning with the month after the entry of the habeas corpus order. But there are compelling reasons why such an implication and such a reduction is invalid. " We may not now imply a condition which the parties chose not to insert in their contract " (*Raner* v. *Goldberg*, 244 N. Y. 438, 442). These parties, obviously represented by most painstaking attorneys, not only put this whole matter of money payments in such complete terms as to forbid any additions by implication, but went, even, to the length of adding this express language on the subject: " FIFTEENTH: The parties have incorporated in this agreement their entire understanding. No oral statement or prior written matter extrinsic to this agreement concerning the rights, duties or obligations of either party hereto to the other shall have any force or effect. The parties are not relying

on any representations other than those expressly set forth ''. Further on, in article SEVENTEENTH, the parties declared that each had had independent legal advice by counsel of his or her own selection, that each fully understood the facts and his or her legal rights and liabilities, and that each, after receiving such legal advice, believed the agreement to be fair. Elsewhere in the writing, and serving as final evidence of the completeness and unalterability of the arrangement, we have an express provision that, if the agreement should be (as it afterward was) made part of any decree or judgment, such judgment or decree should nowise change the agreement and if such judgment or decree should be (as it later was) in a divorce action, it should contain no provision for alimony but should, if the law permitted, deny any jurisdiction of the court issuing such judgment or decree, to modify the same in any respect. If all that language does not operate to forbid the writing into this separation agreement of a new term, not stated or suggested in the paper, and inconsistent with its covenants, then the writing of agreements that speak for themselves is a lost art.

This is not the first time the New York courts have had to deal with unitary and unallocated support provisions for wife and children, in situations like this where the wife, for some reason not of her making, was not supporting the child or children and yet demanded the full alimony. In every such case until the present one the courts have enforced the contract as written and refused to do what the parties had failed to do, that is, apportion the total sum (*Harwood* v. *Harwood*, 182 Misc. 130, affd. 268 App. Div. 974; *Cogswell* v. *Cogswell*, 130 Misc. 541; and see discussion in *Yates* v. *Yates*, 183 Misc. 934). Particularly close is the *Cogswell* case, where the then Justice RIPPEY dealt with a husband's promise to pay his wife $400 per month for the support of the wife '' and such children as shall be with her ''. The couple had three children and all three were actually living with their father but the court found it impossible to reduce the husband's obligation, since that suit, like the present one, was at law on an indivisible promise to pay, not subject to modification by a court. The most recent judicial pronouncement on the subject is by this court in *Rehill* v. *Rehill* (306 N. Y. 126, 133) wherein it was held that a $200

per month agreed payment to the wife " for her support and maintenance and for the support and maintenance of their children, until she shall die or remarry " could not be reduced by the husband or by the court simply because, after coming of age, one of the daughters moved out of her mother's residence. To the husband's argument (in *Rehill* v. *Rehill*) that the parties intended that the full amount should be paid only so long as the wife actually supported both children in her home, this court gave the answer equally appropriate in the present case: " The simple answer to this defense is that the separation agreement contains no such provision ". (P. 133.) Another recent decision of ours — *Matter of Herzog* (301 N. Y. 127, *supra*) — is helpful only insofar as it shows the opposite sort of situation since the *Herzog* agreement and trust indenture, read together, made a specific allocation of separate amounts for the wife and each child, and, further, said that when the children were in the custody of their father, payments for them, to the mother, should cease.

It seems almost unnecessary to add as a reason for overturning the decision below, that this separation agreement was " ratified, confirmed and approved " and that each of the parties was " ordered to comply with the terms and conditions thereof " in and by the Nevada decree (see similar Nevada decree language quoted in *Schacht* v. *Schacht*, 295 N. Y. 439, 442). Thus the terms became part of a judgment entitled to full faith and credit, and the past due payments became a " debt of record " (*Barber* v. *Barber*, 21 How. [U. S.] 582, 595; *Lynde* v. *Lynde*, 162 N. Y. 405, affd. 181 U. S. 183; *Van Horn* v. *Van Horn*, 196 App. Div. 472). The Nevada decree established rights which would be " substantially impaired " by the judgment entered herein (*Schacht* v. *Schacht, supra*, p. 442, and authorities cited; *Goldberg* v. *Mayer*, 243 App. Div. 477, affd. 270 N. Y. 660; *Fry* v. *Fry*, 304 N. Y. 889; *Rehill* v. *Rehill, supra*). In our recent *Rehill* decision, in a most similar situation, we denied power to the New York courts even to entertain a demand to reform the separation agreement approved by the Nevada court, since " were we to do so we would in effect be ' reforming ' the Nevada decree as well as the separation agreement, which we may not do ". (306 N. Y. 126, 135.) In the present case there

is not even a request for reformation, but an attempt to reform by implying nonexistent terms. It would be all well enough to attempt, in such a situation, to work out the natural justice of the thing, were there no valid agreement and valid judgment confirming it. But natural justice and the stability of society requires us to compel the performance of contracts, and the enforcements of judgments, as they are written. Who knows whether this plaintiff would have signed the agreement if it had contained the term now sought to be implied, or whether the Nevada court would have approved it in such form?

In article Fifth of the separation agreement it is stated that the monthly payments '' are predicated upon the assumption and understanding that such payments are and will continue to be deductible from the husband's gross income and will become the taxable income of the wife ''. That furnishes a little more evidence that, whatever position either party took later, they both considered, when signing the agreement, that the agreed upon monthly alimony was an indivisible payment to the wife, and taxable as such. As it turned out, the income tax authorities took a different view and permitted the husband to deduct only so much of the alimony as the tax officers thought paid for the wife's sole benefit. Those later determinations cannot change the meaning of this contract. However, tax savings and refunds to plaintiff were brought about by the rulings that only part of the monthly payments were deductible by the husband and taxable to the wife. The resulting situation is covered by subdivision (a) of article Fifth of the separation agreement, which says that if it shall be '' finally determined '' that any part of the support money payments are not a valid deduction from the husband's taxable income, and if the wife shall receive tax benefits from that determination, she will pay to him the resulting differences in her Federal and State income taxes. Her failure to make those repayments to him is the subject matter of defendant's counterclaim in this suit. We agree with the courts below that defendant is entitled to recover on that counterclaim in the amount allowed him below.

The judgment should be modified by adding a further award of damages to plaintiff of $6,250 for the months from April, 1951, to August, 1951, both inclusive, with appropriate interest, and, as so modified, affirmed, with costs to plaintiff.

VAN VOORHIS, J. (dissenting). In our view it was not the intention of this agreement that the wife should receive more money for her personal use if she became less fit than the father to have custody of their children. She was not intended to derive a personal advantage if it were held that their welfare would best be served by transferring them to the father. Neither did the agreement confer upon her rights without duties, since she agreed to pay for their support, education and maintenance out of the $2,500 per month which the husband contracted to pay to her. Appellant does not dispute that it was her duty thus to provide for these children under this separation agreement, which was confirmed by the Nevada divorce decree, nor does she deny that the New York County Special Term had jurisdiction in the habeas corpus proceeding by reason of circumstances occurring subsequent to the entry of the Nevada decree. Due to that final order of a court of competent jurisdiction, it has become impossible for plaintiff to perform her obligation to support, educate and maintain these children in her custody, which she agreed to do. She contends that she is thereby discharged from the obligation to spend any part of the $2,500 per month for the children. The financial burden must be borne by him of supporting and educating these three offspring of the marriage, who are now in their early and middle teens, while at the same time he is compelled to duplicate these expenditures by paying to his estranged wife, without obligation on her part, these very moneys which the agreement contemplated that she was to spend for the same purpose. We think that such a decision violates the intent of the parties as expressed in the contract. There is no occasion for us to assume, without having the final order in the habeas corpus proceeding under review, that the court which rendered it fell into error in finding not only that these children have " flatly refused to make their home " with their mother, but also that " on the basis of the evidence, it cannot be said that the preference which the children have expressed and manifested for their father, both in court and in chambers, is capricious or entirely without foundation." The decision of the court in the habeas corpus proceeding continues: " It goes without saying that on question of custody the paramount consideration is the happi-

ness, interest and welfare of the children involved. No hard and fast rule can be laid down. Each case must rest upon facts peculiar to it. The court will, of course, consider the preference of the children, if of sufficient age and discretion, even though not controlling. The court will also consider the character and competency of the parents, the ability of each parent to care for and protect the children, the advantages which the children will derive if custody is awarded to such parent, the probable environment in which the children will live, the age, sex and health of the children, and other similar circumstances [citing cases]. I believe that the happiness, welfare and best interests of the children will be served if their custody, at least for the present, is awarded to the father. In reaching this conclusion, I have disregarded evidence of incidents not in the presence of the children.'' It was further found that there was no evidence that the children's preference for their father '' has been induced by any undue influence exerted upon them,'' nor that their minds '' have been poisoned against the mother, as claimed by the relator.''

When they refused to make their home with their mother, and came to live with him and his second wife under these circumstances, what was the father to do? It would have been easier and cheaper for him as it turns out to have locked the door, and told them to go back to their mother. He opened his home to them as any considerate parent would have done, and by orderly process of law obtained a judicial decision confirming the change in custody. It is not contended that this decision was in any respect erroneous.

When, regardless of that decision, appellant sued her former husband to recover the full amount of the monthly payments under the separation agreement, without deduction on account of the change in circumstances affecting the children, the Trial Term and the Appellate Division unanimously denied her that relief. The judgment under review does award to her the full $2,500 per month while the children resided with their father until the final order was entered in the habeas corpus proceeding, but thereafter her recovery has been limited to $1,250 per month on the basis that this is all that the husband is liable to pay to her in event that she ceased to have the legal custody of these children.

This presents the question whether the contract is divisible in event that she ceases to support, maintain and educate the children out of the $2,500 per month that is payable to her partly for that purpose.

This agreement states that in event of the remarriage of the wife, the monthly payments shall be reduced by one half. Whenever one of the children becomes twenty-five years of age, or sooner dies, the amount of the monthly payments is to be reduced by one sixth. If, after becoming twenty-one years of age, any of the children ceases to make his permanent home with the mother, the same amount is to be deducted from the monthly installments and paid directly to the child. The reason for this clause was evidently that the parents could not attempt to regulate the abode of these children after majority, when they would have the right to live where they chose. The reason on account of which no corresponding clause was inserted reducing the amount payable to the wife before the children became twenty-one, was manifestly that the wife agreed to support and educate them in her custody until that time.

Now that the wife has become unable to perform those responsibilities, the judgment appealed from decides that the structure of this separation agreement is such that the obligation of the husband to support his wife is severable from the obligation to pay to her additional money to support the children. In the opinion by Mr. Justice BERGAN, sitting at the New York County Trial Term, it was said: " The parties are presumed to have had in mind * * * by necessary implication, that if the arrangement for custody were later changed by a court, the obligation of the husband to pay the wife for the support of the children would be altered accordingly." The Appellate Division affirmed, without opinion. The question presented is different from those involved in *Rehill* v. *Rehill* (306 N. Y. 126) and in *Harwood* v. *Harwood* (182 Misc. 130); *Cogswell* v. *Cogswell* (130 Misc. 541), and *Yates* v. *Yates* (183 Misc. 934). The contract here makes it evident that $15,000 per year, at the rate of $1,250 per month, was to be paid to the wife for her own support, and that, although she would not have been liable to account for her expenditure of the balance for the benefit of the children for so long as she educated and supported

them in accordance with their station in life, it was not meant that she should receive for her own support moneys that were intended to recompense her for providing for the children. The judgment appealed from should be affirmed for the reasons stated by Mr. Justice BERGAN.

Even if the foregoing views were erroneous, and if the $2,500 per month contracted to be paid to appellant by respondent were indivisible for all purposes, appellant would be chargeable with a breach of the entire agreement upon her own theory. It is indisputable that by not supporting and educating the children she has omitted to perform a material part of her engagement. It is immaterial in this connection whether she lost custody of the children in the habeas corpus proceeding due to her fault or otherwise. The point is that supporting and educating them was a material factor entering into respondent's promise to pay to her the $2,500 monthly allowance. Her inability to perform this part of the agreement, due to whatever cause, constituted a breach of the entire contract if her contention that the monthly payments are indivisible be sustained (*Duryea* v. *Bliven*, 122 N. Y. 567; *Schmidt* v. *Schmidt*, 74 Misc. 423, 425; *Haskell* v. *Haskell*, 201 App. Div. 414; 207 App. Div. 723; "*Moses*" v. "*Moses*", 193 Misc. 890, 895; "*Almandares*" v. "*Almandares*", 186 Misc. 667, 673; *Durso* v. *Durso*, 205 Misc. 446; *Vandemortel* v. *Vandemortel*, 204 Misc. 536, 537; *Matter of Noel*, 173 Misc. 844, 845–846; *Mackey* v. *Mackey*, 205 Misc. 470; Grossman on New York Law of Domestic Relations, §§ 436, 438). In most of the cases just cited, all recovery was denied to a wife due to her breach of a separation agreement by denying visitation rights to the husband, which is, if anything, less material than her omission to support and educate the children out of money paid to her for that purpose. Under such conditions, the wife has usually contended that the broken covenant was independent, and the contract divisible, whereas here it is her position that these monthly installments were indivisible as between her and the children. If that position is sound, then she has broken the entire agreement. A leading out-of-State case upon this point is *Cole* v. *Addison* (153 Ore. 688; Note, 105 A. L. R. 901).

Even if the inability of these children to live with their mother be due to some personality factor for which she is not at fault, nevertheless she has broken her part of the agreement by not supporting and educating the children. In *Lorillard* v. *Clyde* (142 N. Y. 456, 462) this court wrote, per ANDREWS, Ch. J.: "The general doctrine that when a party voluntarily undertakes to do a thing, without qualification, performance is not excused because by inevitable accident or other contingency not foreseen, it becomes impossible for him to do the act or thing which he agreed to do, is well settled. This doctrine protects the integrity of contracts, and one of the reasons assigned in its support in the early case of *Paradine* v. *Jane* (Aleyn Rep. 26) is that as against such contingencies the party could have provided by his contract. (See *Harmony* v. *Bingham*, 12 N. Y. 99; *Ford* v. *Cotesworth*, L. R. [4 Q. B.] 134; *Jones* v. *U. S.*, 96 U. S. 24.)" (*Forty-fifth St. Realty Co.* v. *17–19 West 45th St. Corp.*, 142 Misc. 310, 311; 2 Clark on New York Law of Contracts, § 973, footnote No. 82, and cases cited).

In this instance, if appellant intended to be relieved of her obligation to educate and maintain the children in the contingency which has occurred and to keep for herself money intended for their support, her counsel should have seen that the separation agreement so provided.

It is inaccurate to state that the husband has elected not to declare this contract broken by appellant. The position which he has taken, and which has been sustained at the Trial Term and in the Appellate Division, is that the structure of the contract itself renders these amounts severable, at least to the extent of precluding recovery by the wife under the agreement of more than $15,000 per year exclusively for her own use. The allegation in his answer that by the terms of the agreement the sum of $2,500 per month was intended to be one half for the support and maintenance of the plaintiff, and one half for the support, maintenance and education of the children, and that she discontinued providing for their education, maintenance and support, should be construed as an allegation that she has not fulfilled the latter obligation regarded as an independent covenant on her part to be performed, in consideration of which he covenanted to pay $1,250 per month. This position which

he took in his answer and at the trial amounted to a contention that the covenant which she had broken was severable from the rest of the agreement, under which she continued to be entitled to receive $1,250 per month for her own support and maintenance. Now that this court is holding that this covenant is not severable, the legal effect is that she has broken a dependent covenant thus entitling him under the cases above cited to claim a breach by her of the entire contract. We should not hold that he has waived every defense due to the circumstance that the part of the agreement which he alleged that she failed to perform turns out to be a dependent instead of an independent covenant. If a party elects to pursue an illusory alternative, that does not prevent him from obtaining the relief to which he is really entitled (*Schenck* v. *State Line Tel. Co.,* 238 N. Y. 308; Note, 35 A. L. R. 1153; *Clark* v. *Kirby,* 243 N. Y. 295; *Fitzgerald* v. *Harbor Lighterage Co.,* 244 N. Y. 132). If respondent had no such recourse as that which he invoked, in other words, if his payment of $1,250 a month instead of $2,500 was not the correct measure of his rights and liability under the contract, then he should not be precluded from contending that appellant broke the whole contract. What he did should, in the light of our decision, be construed as an act declaring that the entire contract had been broken by her. Respondent in refusing to pay the full stipulated installments evinced an intention no longer to be bound by the agreement on account of her breach, if the contract was entire, as this court is now holding that it is. In that event, under the authorities, appellant would be entitled to recover nothing, and the judgment awarding to her $1,250 a month should be affirmed for the reason that he has not appealed. Even if it were held that he has not elected to declare the entire agreement broken, the cases cited indicate that he should be given opportunity to do so after the election which he did make has been held to have been illusory.

Even if the answer were not to be construed as alleging at least a partial breach, defendant would not be out of court on the pleadings, inasmuch as plaintiff has failed to allege performance of her obligations, presumably for the reason that according to her theory of the action she rests under no obligation to support and educate these children as a condition of

receiving $2,500 each month. If either party should fail on the basis of the pleadings, it should be the plaintiff and not the defendant, since the burden of pleading and proving performance of the conditions on her part was on her (*Quinn* v. *Van Pelt,* 56 N. Y. 417; *Platt* v. *Tess Hat Co.,* 280 App. Div. 345). She has not even alleged performance under the formula allowed by rule 92 of the Rules of Civil Practice.

The circumstance that this separation agreement was confirmed by the Nevada divorce decree, and " each " of the parties ordered to comply with the terms and conditions thereof, does not change the meaning of the agreement nor deprive it of its character as a contract in New York State. Indeed, appellant has sued upon it as a contract. The defense is not that the contract should be set aside for fraud or illegality in the courts of this State, after confirmation in another State (*Schacht* v. *Schacht,* 295 N. Y. 439; *Hoyt* v. *Hoyt,* 265 App. Div. 223). Here the defense is that the contract itself means that appellant cannot recover more than monthly payments of $1,250 for her own support after she has been legally deprived of the custody of the children. Although the Nevada decree prevents impugning the validity of the separation agreement, it did not alter its meaning, nor absolve appellant from her covenant to educate and support the children as a condition of receiving the $2,500 monthly allowance. Indeed, as indicated above, it directs *each* of the parties to comply with the terms and conditions of the agreement. *Van Horn* v. *Van Horn* (196 App. Div. 472) does not lead to a different result. There the subsequent litigation in New York State was concerned mainly with whether the wife had broken the agreement, which was an issue of which the New York courts did not hesitate to take jurisdiction notwithstanding that the agreement had been incorporated in a Nevada divorce decree.

The judgment appealed from should be affirmed, without costs.

LEWIS, Ch. J., DYE and FROESSEL, JJ., concur with DESMOND, J.; VAN VOORHIS, J., dissents in an opinion in which CONWAY and FULD, JJ., concur.

Judgment accordingly. [See 307 N .Y. 677.]