RICHMOND FARMS, INC., Respondent, v. FOREMOST DAIRIES, INC., Appellant.—

Beldock, P. J., Ughetta, Kleinfeld and Brennan, JJ., concur; Christ, J., dissents and votes to reverse the order and to grant defendant's motion for summary judgment, with the following memorandum: The defendant operates a large milk business. Its Hoboken Milk Division, also referred to as the Eastern Milk Division, has its "headquarters" in Hoboken, New Jersey. In 1959 such Division was described as embracing all of defendant's business "this side of Philadelphia;" and it included wholesale and retail routes in Brooklyn, Staten Island and northern New Jersey. On April 2, 1959, the defendant contracted to sell to the plaintiff for $100,000, its (defendant's) 19 retail or home delivery milk routes on Staten Island, together with 24 trucks. Defendant then also operated on the island five wholesale (store delivery) milk routes. Staten Island is coterminous with Richmond County and the Borough of Richmond in New York City. The issue of whether or not the contract was breached by defendant depends upon the meaning of its 17th paragraph. In the record on appeal, where the entire contract is printed, this paragraph is inaccurately stated. A carbon copy of the agreement shows the paragraph to be as follows: "SEVENTEENTH: Seller [defendant] agrees that if it should sell its wholesale dairy business in the Borough of Richmond, City of New York, other than as a part of a larger segment of its business, within one year from the date of closing hereunder, it will give Buyer [plaintiff] thirty (30) days in which to match the terms and conditions of any bona fide offer to purchase said wholesale dairy business in the Borough of Richmond, City of New York, and that if Buyer [plaintiff] shall meet the terms and conditions of said offer Seller [defendant] will sell said wholesale dairy business to Buyer [plaintiff] upon said terms and conditions." On September 1, 1959, within the one-year period, defendant sold to the Queens Farms Dairy, Inc., for a price of $700,000, its (defendant's) five wholesale dairy routes or "business" in the Borough of Richmond, together with the following: 9 wholesale routes in Brooklyn; 21 trucks, 3 trailers and 5 passenger automobiles; land and plant in Unionville, New York; land and depot in Brooklyn; and certain milk products on hand. Plaintiff, claiming that such sale was a violation of said paragraph Seventeenth of the contract, seeks money damages in the sum of $50,000. In its complaint plaintiff alleges that the proviso: "as part of a larger segment of [defendant's] business," means that the defendant was to be relieved of its obligation to give plaintiff a first option only if the Richmond Borough wholesale routes were sold as part of a sale of defendant's entire business within the Eastern Milk Division. In other words, the claim is that this proviso did not permit the sale of the wholesale Richmond routes without permitting plaintiff to first exercise its option, if such routes were being sold as part of a sale that included no other routes than the wholesale ones in Brooklyn. This claim is based upon the theory that the Staten Island and Brooklyn routes together were not "a larger segment" of defendant's business. It is undisputed

that the Eastern Milk Division contained other routes in addition to these Brooklyn and Staten Island routes. The defendant must prevail on this motion unless paragraph Seventeenth is ambiguous on its face. If it is not ambiguous, parol evidence is neither required nor permitted to explain its meaning (*Nichols* v. *Nichols*, 306 N. Y. 490, 496; *Delancey Kosher Restaurant & Caterers Corp.* v. *Gluckstern*, 305 N. Y. 250, 257). Here, if by paragraph Seventeenth the parties had intended a restriction to a sale of the entire Eastern Milk Division, such a broad restriction could have been easily written into the contract. The parties were thoroughly experienced in the dairy business and they were represented by able counsel. The very fact that such a comprehensive restriction was not specified indicates that it was never intended; hence, such restriction may not now be retroactively written into the contract (*Prudential Westchester Corp.* v. *Tomasino*, 5 A D 2d 489, 494, affd. 6 N Y 2d 824). The qualifying words "larger segment" are neither confusing nor unclear nor ambiguous. A segment is a separable part of the whole, and all these routes were separable parts of the whole of defendant's business. The parties recognized this dichotomy. They considered the wholesale business in Staten Island to be a separable part of the whole, or a segment; the terms and the language of the contract show they contemplated that such wholesale business could be sold alone, either to the plaintiff or to another. This contingency was foreseen; express provision for it was made accordingly. As the words "larger segment" are used, they connote relativity. A segment larger than some other segment is implied, i.e., a segment larger than the segment referred to as the wholesale routes on Staten Island. If in the contemplation of the parties such wholesale routes were meant to be a segment under the contract, then surely the Brooklyn routes were also a segment. In combination, the Staten Island routes simply became part of the larger segment when sold to Queens Farms Dairy, Inc. The contract here did not restrict the defendant from selling any part of its other business. Nor was any provision made for valuing separately the Staten Island wholesale routes when sold in combination with other parts of defendant's business. If these routes were intended to be excluded from such a sale and reserved for the plaintiff, some provision requiring a separate valuation for them would have been incorporated in the contract. Only in the event that the Staten Island wholesale routes were sold *alone* was a valuing formula set up, i.e., plaintiff would have to match the offer of the other proposed purchaser. The sale to Queens Farms Dairy, Inc., is a sale in good faith; it is not a resort to chicanery or a mere subterfuge in order to deprive plaintiff of any contractual right. The parol evidence rule and the rules of construction are designed to give force to written contracts clearly expressed, as the one at bar, and to avoid the very controversy which plaintiff now seeks to raise in an effort to enlarge its rights beyond those specifically accorded to it under the contract. [31 Misc 2d 617.]