John A. GAMBLING and Sally Gambling, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 989, Docket 82–4010.

United States Court of Appeals, Second Circuit.

Argued April 19, 1982.

Decided May 27, 1982.

---

George Wailand, New York City (Walter C. Cliff, Richard Coll, Cahill, Gordon & Reindel, New York City, of counsel), for petitioners-appellants.

James F. Miller, Washington, D.C. (Michael L. Paup, Richard W. Perkins, Dept. of Justice, Washington, D.C., of counsel), for respondent-appellee.

Before WATERMAN, FRIENDLY and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

John A. and Sally Gambling ("Gambling") appeal from a decision of the United States Tax Court, Wilbur, J., upholding a determination by the Commissioner of Internal Revenue ("Commissioner") of a deficiency in Gambling's federal income tax for the calendar year 1973 in the amount of $50,508.17 plus accrued statutory interest. For the reasons set forth below, we affirm.

## BACKGROUND

On January 1, 1963, Gambling and radio station WOR, a division of RKO General, Inc. ("RKO"), entered into an agreement (the "1963 agreement") "providing for the engagement by RKO of [Gambling's] services" as a radio announcer for the three year period commencing January 1, 1963 and ending December 31, 1965. The contract provided for the payment of deferred compensation to Gambling in the event that Gambling's contract share of revenues from his radio programs exceeded $125,000 per annum. Subparagraph 5(d) of this agreement provided that deferred compensation "shall be accrued or set aside and be paid by RKO to [Gambling] upon the terms and conditions" set forth in paragraph 6. Under subparagraph 6(a), RKO agreed to make payments of deferred compensation to Gambling at the rate of $2,000 per month beginning in January 1985. Subparagraph 6(b) provided, however, that—

> In the event of the death or permanent disability of [Gambling] prior to December 31, 1984, or in the event of the discontinuance of the employment of [Gambling] by RKO upon the expiration or termination of the term of this agreement or any extension or renewal thereof prior to December 31, 1984, the monthly payments provided in subparagraph "(a)" above shall be made commencing on the first day of the month following such death, permanent disability or discontinuance of employment; in all other respects such payments shall be paid in the manner and to the extent provided in subparagraph "(a)" above.

By a letter agreement dated February 28, 1965 (the "1965 letter agreement") Gambling and RKO agreed to terminate the 1963 agreement "in all respects" except that subparagraphs 5(c) and (d) and paragraph 6 were to continue in "full force and effect until the accounting and payments contemplated thereby [were made]."[1] The

next day, RKO and John A. Gambling Enterprises, Inc. ("Enterprises"), a New York corporation which had elected Subchapter S status under the applicable provisions of the Internal Revenue Code, entered into a new contract (the "1965 agreement") whereby Enterprises agreed to furnish the services of Gambling to RKO for the period commencing March 1, 1965 and ending December 31, 1969. Although Enterprises was substituted for Gambling as a party to the 1965 agreement, Gambling continued to perform the same services he had performed under the 1963 agreement.

Pursuant to subparagraph 5(d) of the 1963 agreement, $70,777.52 in deferred compensation owed Gambling accrued. RKO, however, did not fund an account for Gambling's deferred compensation or set aside the funds owed Gambling. Gambling neither demanded nor received payment of compensation prior to 1973. However, in May 1973, Gambling asked RKO to pay him $23,000 of the deferred compensation. RKO agreed to pay Gambling the money if he signed a letter amendment to the 1963 agreement which stated, *inter alia*:

> At [Gambling's] request, RKO is paying to [Gambling] upon the signing of this letter agreement, from the sums accrued or set aside and held by RKO as provided in subparagraph (d) of paragraph 5 and in paragraph 6 of the 1963 Agreement as amended by the 1965 Amendment [ (the 1965 letter agreement) ], the amount of Twenty-three Thousand Dollars ($23,000).
>
> As herein amended, the 1963 Agreement as amended by the 1965 Amendment shall continue in full force and effect.

In response to Gambling's further oral request, RKO paid the $47,777.52 balance of Gambling's deferred compensation on July 26, 1973.

Gambling did not report the deferred compensation on his federal income tax re-

---

1. The 1965 letter agreement provides in pertinent part:

   Subparagraph (c) of paragraph 5 of the 1963 Agreement shall continue in full force and effect until the accounting and payments

contemplated thereby shall have been completed. Also, subparagraph (d) of paragraph 5 and all of paragraph 6 shall continue in full force and effect until all the payments contemplated thereby shall have been made.

turns for years prior to 1973. As an attachment to the 1973 return, Gambling reported the receipt of the $70,777.52 in deferred compensation, but he did not include it in his 1973 gross income, claiming that "[t]his [amount] was taxable in 1963, 1964 and 1965." Arguably, under section 6501(a) of the Internal Revenue Code, these years were closed to tax assessment. In a Notice of Deficiency dated June 23, 1978, the Commissioner rejected this position, increased Gambling's gross income by $70,777.52, and assessed a $50,508.17 deficiency against Gambling.[2]

On September 19, 1978, Gambling filed a petition for redetermination in the United States Tax Court. J.App. at 3. Gambling contended that in accordance with the terms of the 1963 agreement, he was entitled to receive the deferred compensation in 1965 through 1968 and that, therefore, he was in constructive receipt of the deferred compensation during that period. J.App. at 6, 8–9.

The tax court, 42 T.C.M. (CCH) 1372, 1376–77 (Oct. 7, 1981), upheld the Commissioner's deficiency determination, finding that Gambling had no contractual right to the deferred compensation prior to January 1985 because his employment by RKO was not discontinued. The tax court held in the alternative that even if Gambling were "contractually entitled to the deferred compensation payments beginning in 1965, it is clear that his right to such amounts in that year was not unrestricted so as to invoke the doctrine of constructive receipt." *Id.* at 1377.

## DISCUSSION

"[I]ncome that is subject to a [taxpayer's] unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not." *Corliss v. Bowers*, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916 (1930). Thus, Treas.Reg. § 1.451–1(a) (1981), provides that an item of income is to be includ-

ed in gross income in the year in which it is "actually or constructively received." Treas.Reg. § 1.451–2(a) (1981), provides in pertinent part:

Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions.

Gambling claims that he had a contractual right to receive the deferred compensation once his employment with RKO was discontinued and that he was in constructive receipt of the funds thereafter. He argues that the Commissioner stipulated that Gambling's employment was discontinued as of March 1, 1965 and that this stipulation is conclusive on this issue. Gambling maintains that the tax court erred in interpreting the 1963 agreement and in holding that he did not have a right to the deferred compensation in 1965.

■■■ We find no error in the tax court's interpretation of the 1963 agreement. As the court recognized, 42 T.C.M. (CCH) at 1376–77, the key to the issue of Gambling's contractual right to deferred compensation is subparagraph 6(b) of the 1963 agreement. That section provides for the early payment of Gambling's deferred compensation in the event of his death or disability. Additionally, the agreement provides for early payment upon the "discontinuance" of Gambling's employment with RKO *and* "the expiration or termination of the term of this agreement or any extension or renewal thereof prior to December 31, 1984." Because the 1963 agreement expired on December 31, 1965, Gambling's entitlement to

**2.** The deficiency assessment was based primarily upon Gambling's receipt of deferred com-

pensation.

deferred compensation beginning in 1966 [3] turns on whether his employment was discontinued within the meaning of the 1963 agreement.

In construing the 1963 agreement, we are guided by the familiar principle of contract law that "when the terms of a written contract are clear and unambiguous, the intent of the parties must be found therein." *Nichols v. Nichols*, 306 N.Y. 490, 496, 119 N.E.2d 351, 353 (1954). However, where the terms of the contract are ambiguous or contradictory, the court must construe the contract to give effect to the intent of the parties. *Rottkamp v. Eger*, 74 Misc.2d 858, 861, 346 N.Y.S.2d 120, 124–25 (N.Y.Sup.Ct.1973); *see Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 896 (2d Cir. 1976).

We find that in the context of the 1963 agreement, the phrase "discontinuance of the employment of [Gambling] by RKO" is susceptible of more than one meaning. Gambling contends that he and RKO intended the phrase to denote the technical termination of Gambling's direct employment with RKO. Like the tax court:

> [w]e believe this paragraph contemplates the complete cessation of services (directly or indirectly) by Gambling for RKO, either through death or disability, or through retirement or employment by another communications business. We certainly do not believe that the parties intended to allow the acceleration provisions of paragraph 6(b) to be triggered by the simple expedient of Gambling's incorporating himself although Gambling would continue to perform services identical to those he was performing when the parties entered into the 1963 agreement.

42 T.C.M. (CCH) at 1376 (footnote omitted).

Further, the conduct of the parties contradicts Gambling's interpretation of the 1963 agreement. The tax court found, and Gambling does not dispute, that when the

1965 agreements were signed neither Gambling nor RKO believed that Gambling would be entitled to deferred compensation until January 1985. The same conclusion is compelled by the fact that both the 1965 and the 1973 letter agreements specifically carried forward the deferred compensation provisions of the 1963 agreement. Accordingly, the tax court did not err in finding that Gambling was not entitled to the deferred compensation until his death, disability or complete cessation of services for RKO.

In light of our interpretation of the contract, we do not believe that the stipulation is dispositive. We do not quarrel with Gambling's basic proposition that stipulations are "conclusive admission[s] by the parties" and "shall be binding [upon the taxpayer and the Commissioner] in the pending case," Rule 91(e), Rules of Practice and Procedure of the United States Tax Court. *See Kampel v. Commissioner*, 634 F.2d 708, 710 n.3 (2d Cir. 1980); *City Trust Co. v. United States*, 497 F.2d 716, 719 (2d Cir. 1974). We disagree, however, with Gambling's claim that the Commissioner conceded that Gambling's employment with RKO was discontinued when he entered into the 1965 agreements.

The stipulation states:

> As of March 1, 1965, Gambling's employment by RKO was discontinued. However, by virtue of Gambling's employment by Enterprises and the 1965 Agreement there was no interruption of Gambling's services to Station WOR.

We believe that the tax court was correct when it stated:

> Although the parties stipulated that "[a]s of March 1, 1965, Gambling's employment by RKO was discontinued," we do not think that this constitutes a concession by the [Commissioner] that Gambling's services were discontinued within the meaning of paragraph 6(b) since . . . discontinuance denotes a complete sepa-

---

**3.** In his petition for redetermination, Gambling claimed that $20,000 in deferred compensation was taxable in 1965. However, because the term of the 1963 agreement did not expire until

December 31, 1965, it is clear that even were Gambling's employment discontinued in 1965, he would not have been entitled to receive deferred compensation until January 1, 1966.

ration of service. This is especially so when read in light of the following sentence wherein the parties also stipulated that "[h]owever, by virtue of Gambling's employment by Enterprises and the 1965 agreement there was no interruption of Gambling's services to Station WOR." 42 T.C.M. (CCH) at 1376 n.4.

Gambling's final contention is that the tax court erred in finding that substantial limitations or restrictions existed which defeated his right to receive the deferred compensation from 1965 through 1968. Because Gambling was not contractually entitled- to the deferred compensation during this period, and there is no indication that the parties intended anything to the contrary, our inquiry ends.

The decision of the tax court assessing a deficiency against taxpayers in the amount of $50,508.17 for the calendar year 1973 is affirmed.

FRIENDLY, Circuit Judge, concurring in the result:

It would, of course, be unfortunate if Gambling were to escape taxation on the $70,777.52 of deferred compensation paid him in 1973 because of an ill-advised stipulation by an assistant district counsel of the Internal Revenue Service.[1] Still I cannot agree that when counsel for the IRS stipulated with counsel for Gambling that "As of March 1, 1965, Gambling's employment by RKO was discontinued", the very words used in subparagraph 6(b) of the agreement of January 1, 1963, they meant anything other than what they plainly said.

However, although the assistant district counsel thus gave away a large part of the IRS' case, he did not succeed in giving away all. Income is constructively received only if two conditions are met: that the taxpayer was legally entitled to it, which the stipulation settles in Gambling's favor, and that his control of its receipt was not "subject to substantial limitations or restrictions."

Treas.Reg. § 1.451–2(a). While the stipulation of February 8, 1980, settled that RKO could not have lawfully refused Gambling's demand in 1973, it did not settle whether RKO might reasonably have believed in earlier years that it could. The reasons persuasively set forth in Judge Meskill's opinion amply establish that RKO might reasonably have entertained such a belief and quite possibly did. Further substantiation is afforded by the fact that when making the first payment in 1973, RKO insisted on Gambling's signing a letter which "amended" the 1963 agreement as amended by the 1965 amendment.

I would affirm on this ground.

---

1. I do not accept such escape as a necessary conclusion. Although the matter is not before us, the Commissioner might well be able to invoke IRC §§ 1311 and 1312.

It should be made entirely clear that the IRS attorney who signed the stipulation was not the attorney from the Department of Justice who argued this appeal.