■ GREGORY HERR, Respondent, v SANDRA J. HERR, Appellant. [773 NYS2d 124]—

In a matrimonial action in which the parties were divorced by judgment entered January 4, 1996, the defendant former wife appeals from an order of the Supreme Court, Orange County (Peter C. Patsalos, J.), dated May 15, 2003, which granted the motion of the plaintiff former husband to hold her in civil contempt, to vacate a qualified domestic relations order dated September 6, 1996, to award him a judgment against her in the amount of sums previously paid to her by the former husband's pension plan, and to award the former husband an attorney's fee.

Ordered that the order is reversed, on the law, with costs, the motion is denied, and the qualified domestic relations order dated September 6, 1996, is reinstated.

The parties entered into a separation agreement (hereinafter the agreement) on January 6, 1995, which was incorporated, but not merged, into a judgment of divorce entered on January 4, 1996. Pursuant to the agreement, the plaintiff former husband (hereinafter the husband) transferred his one-half interest in the marital residence to the defendant former wife (hereinafter the wife) in consideration of the wife's paying him $11,000, and of a reduction in child support obligations otherwise required by the Child Support Standards Act. The wife agreed to make the payments on the mortgage on the marital home as well as on a home equity loan that financed the husband's car and computer. The husband agreed to pay a percentage of his pension benefits to the wife upon his retirement, in accordance with a formula later memorialized in a qualified domestic relations order dated September 6, 1996 (hereinafter the QDRO). The agreement also provided that the wife tender the husband 20% of the net profits from the sale of the former marital residence when it was sold and that, if she failed to do so, she waived her interest in the husband's pension benefits and consented to the vacatur of the QDRO.

Upon the wife's refusal to sell the former marital residence, the husband moved to hold her in civil contempt and to vacate the QDRO. He also moved to recover the pension benefits paid to her since 2002 and for an attorney's fee. The Supreme Court granted the motion in its entirety, on the ground that the wife refused to sell the house and thus failed to abide by the terms of the agreement. We reverse.

"The first and best rule of construction of every contract, and the only rule we need here, is that, when the terms of a written contract are clear and unambiguous, the intent of the parties

must be found therein . . . The applicability, to separation agreements, of that fundamental rule, has been affirmed by this court on several occasions" (*Nichols v Nichols,* 306 NY 490, 496 [1954] [citations omitted]; *see Matter of Meccico v Meccico,* 76 NY2d 822, 824 [1990]; *Rainbow v Swisher,* 72 NY2d 106, 109 [1988]; *Fishler v Fishler,* 2 AD3d 487 [2003]).

In the case at bar, the separation agreement contained no language compelling the wife to sell the marital residence on or before a date certain, or to sell it at any time (*see Prince v Prince,* 149 AD2d 979 [1989]; *Cataldo v Cataldo,* 143 AD2d 797 [1988]; *cf. Matter of Violi,* 65 NY2d 392, 393-394 n 1 [1985]; *Brower v Brower,* 226 AD2d 92 [1997]; *Fuchs v Fuchs,* 134 AD2d 406 [1987]). Contrary to the husband's contention, "[w]e may not now imply a condition which the parties chose not to insert in their contract" (*Raner v Goldberg,* 244 NY 438, 442 [1927]; *see Nichols v Nichols, supra* at 496; *Karl v Karl,* 138 AD2d 354 [1988]). The wife thus did not breach the agreement (*see Prince v Prince, supra; Cataldo v Cataldo, supra),* and it was error for the Supreme Court to invoke the remedial provisions of the agreement against her.

Because she did not violate the terms of the agreement, the wife did not disobey a mandate of the Supreme Court in a manner calculated to, or which actually did, defeat, impair, impede, or prejudice the husband's rights (*see Yeshiva Tifferes Torah v Kesher Intl. Trading Corp.,* 246 AD2d 538 [1998]; *City of Poughkeepsie v Hetey,* 121 AD2d 496, 497 [1986]), and the Supreme Court made no finding that she did (*see Oppenheimer v Oscar Shoes,* 111 AD2d 28, 29 [1985]; *Powell v Clauss,* 93 AD2d 883 [1983]; *Matter of Ross v Sherwood Diversified Servs.,* 88 AD2d 936 [1982]). The Supreme Court thus abused its discretion in holding the wife in contempt (*see generally Gordon v Janover,* 121 AD2d 599, 600 [1986]).

Moreover, although the Supreme Court has inherent authority to revisit any of its prior orders "for sufficient reason and in the interests of substantial justice" (*Woodson v Mendon Leasing Corp.,* 100 NY2d 62, 68 [2003]), it abused its discretion in the instant action when it vacated the QDRO on the sole ground that the wife refused to sell the former marital residence (*see generally Woodson v Mendon Leasing Corp., supra).*

Given the foregoing, the Supreme Court also erred in awarding the husband a judgment in the amount of the pension payments the wife has received.

Finally, citing Domestic Relations Law § 237 (c), the husband sought an attorney's fee based on the wife's alleged willful failure to obey the judgment. Alternatively, he based his request

upon the agreement, which required a defaulting party thereunder to reimburse the other for attorney's fees expended in bringing suit to enforce the agreement. The Supreme Court erroneously awarded the husband $750 as an attorney's fee. As noted above, the wife did not willfully fail to obey a mandate of the court, nor was she in default under the agreement.

The wife's remaining contentions either are unpreserved for appellate review or need not be addressed in light of the foregoing determination. Smith, J.P., Goldstein, H. Miller and Townes, JJ., concur.