■ HOLIDAY MANAGEMENT ASSOCIATES, Appellant-Respon-dent, v NEW YORK INSTITUTE OF TECHNOLOGY et al., Respon-dents-Appellants.—In an action, *inter alia,* for specific perfor-mance of a contract for the sale of real property, the plaintiff appeals from so much of an order of the Supreme Court, Nassau County (Burke, J.), dated June 15, 1988, as denied that branch of its cross motion which was for partial summary judgment and the defendants cross-appeal from so much of the same order as denied their motion to dismiss the complaint pursuant to CPLR 3211 (a) (1).

Ordered that the order is modified, on the law and the facts, by deleting therefrom the provision denying the motion to dismiss the complaint pursuant to CPLR 3211 (a) (1) and substituting therefor a provision granting the motion; as so modified the order is affirmed insofar as appealed from, with costs or disbursements.

The plaintiff, a partnership engaged in real estate development, as buyer, entered into a contract of sale on April 15, 1986, with the defendants, as sellers, for the purchase of a parcel of land consisting of 106 acres located in the Village of Old Westbury, New York (hereinafter the Village). At the time the contract of sale was executed, the local zoning ordinance which applied to the "BB Residence District" where the property was located required a two-acre lot for a single-family dwelling. A building moratorium was also in effect in the Village at the time the contract was signed. Paragraph 28 of the contract governing the purchase price of the property provided as follows: "The purchase price shall be determined as follows and shall be paid in Acceptable Funds (as hereinafter defined) on the delivery of the deed as hereinafter provided: With respect to the premises, the purchaser shall pay $345,000 for each Developable Lot (as defined below) within the premises (except that $1,500,000.00 shall be paid for the Developable Lot contained [sic] Chancellor Schure's residence, subject to the provisions of paragraph 30(b)(4) hereof) but the total purchase price shall in no event be less than Fifteen Million Three Hundred Thousand ($15,300,000) Dollars. A 'Developable Lot' shall mean the minimum area required by the zoning laws of the Village of Old Westbury for a single family residential dwelling on the premises, which is presently two (2) acres in size". Under the contract's price per lot formula, the maximum price which the defendant would receive would be $18,285,000 and the minimum price would be $15,300,000.

A separate "letter" agreement executed by the parties on the same day as the contract, provided, in relevant part: "The purchase price set forth in the Contract is based upon developable lots of two (2) acres in size. In the event the minimum developable lot required by the Village of Old Westbury for single family residential dwellings is greater than two (2) acres but equal to or less than three (3) acres, then, notwithstanding anything to the contrary contained in paragraph 28 of the Contract the purchaser shall pay $425,000 for each developable lot within the premises (except that $1,580,000 shall be paid for the developable lot containing Chancellor

Schure's residence, subject to the provisions of paragraph 30(b)(4) of the Contract), provided, however, the total purchase price shall in no event be less than Thirteen Million Fifty Five Thousand ($13,055,000) Dollars". Thus, under the price per lot formula set forth above, the maximum purchase price would be $14,875,000 and the minimum price would be $13,055,000.

Paragraph 55 of the contract also provided, in relevant part, that the purchaser had the right to terminate the contract on or before December 1, 1986, upon the occurrence of (1) the increase of the minimum lot requirement for the demised premises by the Village to require a minimum size lot of more than three acres; or (2) the extension of the building moratorium beyond December 1, 1986. The "letter" agreement between the parties further provided that "either party" could terminate the contract if the minimum lot requirement under the applicable zoning ordinance was increased to greater than three acres. Unlike paragraph 55, however, the letter agreement did not provide an expiration date for the parties' option to cancel the contract.

In November 1986, the parties executed an amendment to the contract which, in pertinent part, modified paragraph 55 by extending the dates set forth therein for the purchaser to exercise its option to terminate the contract. In all other respects, the terms of paragraph 55 remained unchanged. The amendment stated further that "[e]xcept as expressly modified herein, the terms, agreements, covenants and conditions of the Contract shall remain in full force and effect, and the parties hereto ratify and confirm said terms, agreements, covenants and conditions".

In December 1986 the Village enacted Local Law, 1987, No. 13, which, *inter alia,* increased the minimum lot requirement for single-family dwelling to four acres. Section 216-33-0 of the Local Law provided, in pertinent part:

"Pursuant to the authority set forth in Section 7-738 of the Village Law, the Board of Trustees hereby authorizes the Planning Board of the Village of Old Westbury to modify the normally applicable zoning requirements in the B-4 Residence District so as to permit 'lot averaging', which requirements shall be modified * * * only where the [Planning] Board determines that such modification would benefit the Village by virtue of improved subdivision design, environmental protection, increased groundwater recharge, increased open space preservation, the protection of significant site features, better buffer screening, and such other similar objectives of this

ordinance and of Section 7-738 of the Village Law, provided the following criteria are met:

"A. The number of building lots or dwelling units which may be permitted by the Planning Board on any property proposed for 'lot averaging' shall be determined by dividing the total area of the property (in acres) by four (4) and rounding down to the nearest whole number; and

"B. No individual lot shall be less in area than three acres".

Following the adoption of the aforementioned zoning amendment, the plaintiff, by written notice dated December 15, 1987, advised the defendants, *inter alia,* that they had waived their right of termination and that it was ready to proceed to closing of title at the purchase price of $13,055,000 plus certain adjustments. By written notice dated December 16, 1987, however, the defendants advised the plaintiff that they refused to close on the contract due to the adoption of Local Law, 1987, No. 13. In a subsequent written notice dated December 22, 1987, the defendants advised the plaintiff that in view of the zoning amendment increasing the minimum lot requirement to four acres, they were exercising their right to terminate the contract pursuant to the provisions of the parties' letter agreement dated April 15, 1986.

The plaintiff thereafter commenced the instant action seeking, *inter alia,* specific performance of the contract of sale. The defendants moved to dismiss the complaint based on documentary evidence, namely, the contract, the letter agreement, and the amendment to the contract *(see,* CPLR 3211 [a] [1]). The plaintiff thereafter cross-moved for partial summary judgment declaring the parties' contract legally enforceable and directing specific performance thereof.

The Supreme Court denied the plaintiff's motion and the defendants' cross motion finding that the parties' contract, letter agreement and subsequent amendment, as well as the zoning ordinance recently enacted by the Village were unclear and incomplete thereby requiring the court to look outside the agreements to determine the rights of the parties. In view of the absence of evidentiary material pertaining to the motivation or intent of the parties at the time the various documents were executed, the court denied the motion and cross motion. We, however, find that the documents as well as the applicable zoning ordinance are clear and unambiguous and demonstrate that the complaint should be dismissed.

It is well established that when the terms of a written contract are clear and unambiguous, the intent must be found therein *(see, Nichols v Nichols,* 306 NY 490, 496; *Mazzola v County of Suffolk,* 143 AD2d 734). Thus, in cases where the intention of the parties is expressed in plain and unambiguous terms, the question is one of law which may be decided on a motion for summary judgment *(see, Long Is. R. R. Co. v Northville Indus. Corp.,* 41 NY2d 455, 461; *Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285, 290-291). In the case at bar, the terms of the parties' contract, letter agreement and subsequent amendment are clear and unambiguous with respect to the option of the parties' to terminate the contract. Although paragraph 55 of the contract limited the right of termination to the purchaser in the event that 1 of 2 named contingencies occurred, the letter agreement executed simultaneously with the contract, provided that "either party" would be permitted to cancel the contract if the size of the minimum lot for a single-family dwelling was increased to more than three acres. The subsequent amendment executed by the parties in November 1986 had the effect, *inter alia,* of modifying paragraph 55 of the contract so as to extend the dates for the purchaser to act. The amendment expressly stated that unless specifically modified therein, all other terms and agreements between the parties remain in full force and effect. Clearly then, the amendment had no effect on the provision of the parties' letter agreement which unequivocally granted the defendants the option to cancel the contract in the event of an upzoning of the area in which the premises were located. It is a fundamental tenet of contract law that a writing which clearly and unambiguously expresses the intention of the parties should not be modified by the court. Thus, in view of the plain language of the parties' letter agreement, which was unaffected by the November 1986 amendment to the contract, the defendants were acting within their rights by canceling the contract *(see, Castaldo v Dalmazio,* 129 AD2d 548, *lv denied* 70 NY2d 604; *Ferlita v Guarneri,* 136 AD2d 680). Moreover, under the peculiar facts of this case, contrary to the plaintiff's contention, the option to cancel in the event of an upzoning, which was provided for in the letter agreement, was not solely for the purchaser's benefit. The provision benefited the defendants by permitting them to cancel the contract and provide them with an opportunity to negotiate a price per developable lot, albeit of four acres, which would provide the defendants with the opportunity of receiving a total price in excess of the minimum price offered by the plaintiff of $13,055,000.

Finally, we reject the plaintiff's contention that the termination provisions of the "letter" agreement were not implicated by the zoning amendment since under the "lot averaging" provisions of the amendment, the individual lots could be three acres in size. The zoning amendment expressly requires a minimum lot area of four acres with the noted exception that if the Village Planning Board deems it in the Village's benefit, it may approve a subdivision plan incorporating the "lot averaging" formula and permitting individual lots of no less than three acres. In the case at bar there is no evidence to indicate that the Planning Board would authorize the plaintiff to use "lot averaging" with respect to the demised premises, nor is there any indication that under the lot averaging formula, each of the developable lots on the demised premises would be three acres. In view thereof, we conclude that the enactment of the zoning amendment triggered the "letter" agreement's termination provisions. Mollen, P. J., Kooper, Sullivan and Harwood, JJ., concur.