■ COLUMBIA TERRACE DEVELOPMENT CORP., Appellant, v PHILIP BROWN, Respondent.—In an action for an accounting and to recover money had and received, the plaintiff appeals, as limited by its notice of appeal and brief, from so much of an order of the Supreme Court, Kings County (Levine, J.), dated August 25, 1987, as denied those branches of its motion which were to dismiss the defendant's affirmative defenses in their entirety, and the defendant's five counterclaims, and for summary judgment in the plaintiff's favor.

Ordered that the order is modified by deleting therefrom the provisions denying those branches of the plaintiff's motion which were to dismiss the defendant's affirmative defenses and counterclaims and to grant the plaintiff partial summary judgment on the issue of liability, and substituting therefor a provision granting those branches of the motion which were to dismiss the defendant's affirmative defenses and counterclaims, and for summary judgment on the issue of liability on the plaintiff's second and third causes of action; as so modified, the order is affirmed insofar as appealed from, with costs to the plaintiff, and the matter is remitted to the Supreme Court for determination of the amount of the plaintiff's damages, prior to which the parties may conduct reasonably necessary discovery on the issue of damages.

The plaintiff is the developer of a project involving the construction of 129 condominium units. Pursuant to a written

contract dated January 1, 1985, the parties agreed that the defendant, a licensed real estate broker, would act as the plaintiff's exclusive sales agent with regard to units constructed during what were denominated as phases II, III and IV. The defendant's duties were contractually defined as including "placement and design of advertising, coordination of public relations and decorating and furnishing the model apartment, subject to [the plaintiff's] prior approval and subject to reimbursement by [the plaintiff]".

The parties' agreement specified that the defendant "is in a position of trust and confidence with a duty of loyalty to [the plaintiff] and shall spend a preponderance of his time diligently working in the best interests of [the plaintiff]", that for his services, the defendant would be paid 1½% sales commissions on all units sold "with [the defendant] as the procuring cause", and that "[c]ommissions are earned and payable only when, as and if title to the respective units passes". The defendant was afforded a draw in the amount of $500 per week against the commissions "eventually to be earned". He was also able to draw an additional $300 per week "against commissions" to engage the services of a licensed real estate salesperson. Finally, the parties agreed that the contract could "be terminated by either party upon ten days written notice to the other" and that "[u]pon any such termination, commissions for sales contracts already signed up to that time shall be payable to [the defendant] when, as and if title passes, less any amounts previously drawn against commissions to be earned". In October 1986 the parties executed a second agreement which superseded their earlier agreement only insofar as it concerned phase IV units. The terms, including the termination provision, were identical to those of the earlier contract, except that the defendant's commission rate for phase IV units sold was increased to 2½%.

In December 1986 the plaintiff terminated both contracts and demanded that the defendant return $24,465, a sum which it asserted represented money advanced to but unearned by the defendant. The plaintiff premises this litigation on the defendant's refusal to either account for or return money drawn against commissions. By its various causes of action, evidently interposed in the alternative, the plaintiff seeks judgment directing the defendant to render a full and just accounting and to pay it money found to be due or directing that the defendant pay it $24,465.

By his first affirmative defense the defendant asserted that the contract was not terminated in accordance with its terms

and that therefore he was not obligated to account to the plaintiff. By his second affirmative defense the defendant alleged that, in reliance on the agreement and on certain verbal assurances that he would act as sales broker through the entirety of phase IV, he expended 1,700 hours of effort and work, that the plaintiff maliciously refused to allow him to continue to act, and that he is entitled to the value of work, labor and services performed as a complete setoff against unearned commissions. The defendant's first counterclaim, which also served as an affirmative defense, alleged he was entitled to judgment for, or a setoff of, $13,800, representing the amount he alleged was drawn for and actually paid to a salesperson. By way of a second counterclaim, the defendant sought judgment in the amount of $25,500 for the quantum meruit value of his work, labor and services through December 1986. In support of his third counterclaim, couched in terms of a "wrongful discharge", the defendant alleged that the plaintiff ordered him to pay certain promotional and advertising expenses out of his personal checking account so that the plaintiff's reimbursement to him therefor could be treated as a broker's fee which would increase the plaintiff's cost basis so as to reduce or avoid capital gains tax, that the defendant was "discharged" because he refused to become an accessory to tax fraud, and that he was entitled to damages in the amount of $100,000, representing the "anticipated value" of commissions due from the sale of phase IV units. By his fourth counterclaim, the defendant sought $100,000 in punitive damages *(but see, Beck v General Tire & Rubber Co.,* 98 AD2d 756, *lv dismissed* 63 NY2d 603) and by his fifth, the defendant sought specific performance of the contract.

There is no indication that the plaintiff served a reply to the counterclaims, of which it seeks dismissal pursuant to CPLR 3211 (a) (1) and (7). Included in its motion are applications for dismissal of the affirmative defenses pursuant to CPLR 3211 (b) and for summary judgment in its favor pursuant to CPLR 3212. In opposition to the motion, the defendant, who pressed no claim that the contract was not terminated in accordance with its terms, asserted, in effect, only that he was wrongfully discharged. Although the Supreme Court granted the motion to the limited extent of striking that portion of the first affirmative defense which linked a right to an accounting to contract termination, it otherwise ruled that whether the plaintiff acted in bad faith in terminating the contract, whether the defendant was an employee at will, and whether the money allegedly paid by the defendant to a licensed real

estate salesperson was a reimbursable expense under the contract constituted questions of fact mandating denial of the plaintiff's motion. We disagree.

Assuming the relationship between the plaintiff and the defendant is susceptible to a master-servant analysis, the concept of abusive or wrongful discharge constitutes neither a defense to the plaintiff's claim for return of unearned commissions nor a viable basis for either specific performance or for recovery by the defendant of money damages *(see, Sabetay v Sterling Drug,* 69 NY2d 329; *Murphy v American Home Prods. Corp.,* 58 NY2d 293; *Diskin v Consolidated Edison Co.,* 135 AD2d 775). And while parties to an employment contract can by agreement limit the employer's otherwise unfettered right to discharge an at-will employee *(see, Weiner v McGraw-Hill, Inc.,* 57 NY2d 458; *Diskin v Consolidated Edison Co., supra,* at 777), the "verbal assurances" to which the defendant vaguely alluded in his answer are similarly insufficient to warrant further inquiry into the defendant's claims, either as they are asserted defensively or insofar as the defendant advances them as a basis for affirmative relief *(Diskin v Consolidated Edison Co., supra).*

It is a well-settled rule of contract construction that, if the intent of the parties in defining their rights and obligations is expressed in clear and unambiguous terms, intent "must be found therein" *(Nichols v Nichols,* 306 NY 490, 496). And where there is no ambiguity, the question of what the parties intended is one of law determinable by the court on appropriate motion *(see, Holiday Mgt. Assocs. v New York Inst. of Technology,* 149 AD2d 462). Here, the parties unambiguously conferred on themselves the unilateral right to terminate the contract. The plaintiff cannot be compelled to specifically perform a contract validly terminated or to respond in contract, tort or punitive damages due to its exercise of a contractually conferred right. The parties also unambiguously provided that commissions were earned only upon passing of title and that both the $500 and $300 weekly draws were advances against earned commissions, which are therefore unrelated to the reimbursable advertising and promotional expenses governed by other contract provisions. It is thus clear that none of the defendant's counterclaims are viable and that he is entitled to no setoffs against the plaintiff's claim for return of unearned commissions, to which, it is equally clear, there is no defense.

While we conclude as a matter of law that the plaintiff is entitled to return of unearned commissions, we do not con-

clude that relief in the form of interlocutory judgment directing an accounting is warranted. The controversy between the parties is not whether the defendant properly handled money entrusted to him and with respect to which he should be compelled to reveal his dealings *(see,* 1 NY Jur 2d, Accounts and Accounting, § 30). The question is simply whether the defendant, as set forth in the contract, earned commissions already paid him. The plaintiff's claim is more properly one for either money had and received or breach of contract *(see, Schwartz v Dickstein,* 54 AD2d 662). The proper amount of the judgment, however, has not been established. The plaintiff is accordingly granted partial summary judgment on its second and third causes of action and the matter is remitted to the Supreme Court for trial, following appropriate discovery, on the issue of damages. Mangano, J. P., Brown, Eiber and Harwood, JJ., concur.