W.W.W. Associates, Inc., Appellant, v Frank Giancontieri et al., Respondents.

Second Department, December 13, 1989

## APPEARANCES OF COUNSEL

*Dollinger, Gonski, Grossman, Permut & Hirschhorn (Matthew Dollinger* of counsel), for appellant.

*Raskin, Haas & Poli (John G. Poli III* of counsel), for respondents.

## OPINION OF THE COURT

SPATT, J.

This appeal affords us the opportunity to further clarify the law involving contingency clauses contained in a contract to sell real property. Notwithstanding the fact-specific holdings of the cases decided in this area of law, some rules of general application have evolved. While the formulation of broad, sweeping rules of contract interpretation with respect to contingency clauses would be unwise and unworkable, if not impossible, the case law provides some guidelines to aid parties entering into such contracts as well as their counsel and the courts. As the circumstances of the instant case illustrate, foremost among these guidelines is the intent of the parties in including the contingency clause in the contract, as discerned from the language of the clause and the actual impact of the contingency.

■ In this case, the subject real property was encumbered by a notice of pendency as a result of an action commenced by a third party against the defendant sellers. At the request of the plaintiff purchaser, a clause was inserted in the contract of sale which provides, *inter alia,* that "in the event such litigation is not concluded, by or before 6/1/87, either party shall have the right to cancel this contract". Under the facts of this case, in the absence of any persuasive reason to the contrary, we find that this clause was intended for the sole benefit of the plaintiff purchaser and could be timely and unilaterally waived by it without the consent of the defendant sellers.

## I

By contract dated October 16, 1986, the individual defen-

dants Frank and Louis Giancontieri agreed to convey to the plaintiff a parcel consisting of two acres of real property situated in the Town of Babylon, Suffolk County. A notice of pendency had been filed against the real property in question as a result of an action commenced by a third party against Frank and Louis Giancontieri in the Supreme Court, Suffolk County.

During the negotiations prior to the execution of the contract, the plaintiff was assured by the defendant Louis Giancontieri that the pending action was totally without merit and was an attempt to harass him. Nevertheless, the existence of the notice of pendency was of concern to the plaintiff because it would cause potential problems in obtaining a construction loan in order to finance building and in procuring title insurance. Consequently, the plaintiff took the precaution of obtaining the defendants' consent to insert the following clause in the contract of sale: "31. The parties acknowledge that Sellers have been served with process instituting° an action cercerned *[sic]* with the real property which is the subject of this agreement. In the event the closing of title is delayed by reason of such litigation it is agreed that closing of title will in a like manner be adjourned until after the conclusion of such litigation provided, *in the event such litigation is not concluded, by or before 6-1-87 either party shall have the right to cancel this contract* whereupon the down payment shall be returned and there shall be no further rights hereunder" (emphasis supplied). The closing of title was initially scheduled for December 1, 1986, and the sale was not contingent upon the plaintiff's obtaining financing from any institutional lender. In March 1987, the plaintiff was allegedly informed that the defendants were doing nothing to defend the action and were waiting for June 2, 1987, the first available cancellation date pursuant to clause 31, in order to cancel the contract. On April 10, 1987, the plaintiff moved to intervene in the underlying action to protect its interest as contract vendee. The plaintiff then determined that it could obtain financing and title insurance, notwithstanding the action and the notice of pendency and, apparently, elected to waive its right to cancel. On or about May 13, 1987, the plaintiff conveyed its willingness to take title subject to the notice of pendency by notifying the defendants in writing of its desire to close title and to schedule a closing for May 28, 1987. This letter constituted an implicit waiver of the plaintiff's right to cancel as set forth in clause 31. The defendants replied that

the litigation was still pending and rejected the plaintiff's offer to close. As conceded in their brief submitted on this appeal, the defendants "chose to ignore the demand letter [by plaintiff requesting a closing] and elected to cancel the contract pursuant to the * * * litigation contingency provision".

On or about May 30, 1987, the plaintiff commenced the instant action against the defendants for specific performance of the contract. On June 2, 1987, the defendants purportedly exercised their right to cancel the contract by reason of the pending litigation by notifying the plaintiff in writing "that the contract is hereby cancelled as of this date" and by enclosing the deposit. On June 3, 1987, the plaintiff returned the deposit to the defendants, advising them that the instant action had been commenced.

The defendants moved for summary judgment dismissing the complaint on the basis of the litigation contingency clause in the contract. The Supreme Court, Suffolk County, by order and judgment dated November 20, 1987, granted summary judgment in favor of the defendants and dismissed the complaint on the ground that the agreement was clear and unambiguous and conferred a right on either party to cancel. The court further noted that the plaintiff failed to show that the contingency provision at issue was intended solely for the plaintiff's benefit. We disagree.

## II

A party for whose benefit a condition is included in a contract may waive the condition prior to the expiration of the time period set forth in the contract and accept the subject of the contract in an "as is" condition (see, Satterly v Plaisted, 52 AD2d 1074, affd 42 NY2d 933; Weinprop, Inc. v Foreal Homes, 79 AD2d 987; South Shore Skate Club v Fatscher, 17 AD2d 840; 62 NY Jur, Vendor and Purchaser, § 34; 22 NY Jur 2d, Contracts, § 330). A review of the record reveals that under the circumstances of this case the language of clause 31 was intended to protect the plaintiff from having to purchase the property burdened by a notice of pendency filed as a result of the underlying action which could prevent the plaintiff from obtaining clear title and would impair its ability to obtain subsequent construction financing.

It is well established that certain types of contingent provisions in a contract are inserted solely for the benefit of the purchaser, even though a particular clause may itself provide

that either side can cancel. For example, in *BPL Dev. Corp. v Cappel* (86 AD2d 591), a clause in a contract for the sale of real property conditioned the sale upon the purchaser obtaining subdivision approval within two months of the date of signing. As in the instant case, the language of the clause entitled either party to give notice of cancellation. The plaintiff obtained conditional approval within one month, gave notice of its desire to close, and proposed a date for closing. On the proposed closing date, the defendants notified the plaintiff that the contract was canceled because subdivision approval had not been obtained. This court determined that the subdivision approval condition was for the benefit of the purchaser and could be waived by the purchaser, as follows: "The language of paragraph 8 was designed to protect the plaintiff, a land developer, from having to purchase the property if the planning board refused to approve the proposed subdivision. This being so, when the planning board notified the plaintiff that conditional approval had been granted, plaintiff could proceed to close if it deemed the approval to satisfy the paragraph, which had been inserted for its benefit. *The fact that the paragraph provided that the sellers could also cancel the contract if the necessary approvals were not obtained does not change the result. The clear intent of the parties, as expressed in the contract, was to set a time limit on plaintiff's efforts to obtain subdivision approval.* Thus, regardless of whether subdivision approval was obtained since the plaintiff was ready, willing and able to close by the date set in the contract, the defendants did not have the right to cancel" *(BPL Dev. Corp. v Cappel, supra,* at 591 [emphasis supplied]).

Similarly, in *De Freitas v Holley* (93 AD2d 852), the contract provided that the purchaser, at her own expense, could have a termite inspection made within 10 days of the contract date; and that if such inspection revealed a termite condition which the seller was unwilling to correct, the "Purchaser or the Seller" could opt to cancel the contract *(De Freitas v Holley, supra,* at 853). The plaintiff had an inspection conducted and it disclosed substantial termite damage and infestation. The seller expressed his unwillingness to remedy the situation and elected to cancel the contract. The plaintiff then wrote expressing her intention to proceed to closing and stating that she was not concerned about the termite infestation. This court reversed the judgment of the Supreme Court, which upheld the defendant's cancellation of the contract, stating: "The language of paragraph 4 was intended to protect plaintiff

from having to purchase the property in the event that a termite condition was discovered and the seller refused to correct it. *It is well established that a party for whose benefit a provision is inserted in a contract may waive that provision and accept performance of the contract as is* * * *. Thus, when plaintiff learned that the termite inspector had discovered a termite condition, she had the right to waive that defect and require performance of the contract * * *. As the purchaser was apparently ready, willing and able to perform, and had elected to proceed to closing without demanding that the condition be corrected, the seller could not unilaterally cancel the contract of sale based upon a provision affording the seller the right to cancel if he is unwilling to adequately correct a particular condition and guarantee such correction" *(De Freitas v Holley, supra,* at 853 [emphasis supplied]; *see also, Poteralski v Colombe,* 84 AD2d 887 [clause conditioning the sale of real property on the purchaser's obtainment of a survey, a residential building permit and a right-of-way held to be for the benefit of the purchaser who had the right to waive the conditions]).

In *Laxrand Constr. Corp. v R.S.C.A. Realty Corp.* (135 AD2d 685), this court reaffirmed this principle stating that it is "well settled" that a provision conditioning a real property contract upon the purchaser obtaining final subdivision approval "is usually for the purchaser's benefit and can be waived" *(Laxrand Constr. Corp. v R.S.C.A. Realty Corp., supra,* at 686). The court in *Laxrand* sought to determine the intent of the parties and noted the absence of any indication "that the provision was inserted for the benefit of the defendant seller as well" *(Laxrand Constr. Corp. v R.S.C.A. Realty Corp., supra,* at 686; *see also, Lieberman Props. v Braunstein,* 134 AD2d 55, 60).

Another illustration of a contingency clause inserted for the benefit of a purchaser is set forth in *Regional Gravel Prods. v Stanton* (135 AD2d 1079). The sale involved property to be used for the mixing of sand and gravel, and the contract made the sale contingent upon the plaintiff purchaser "obtaining any and all required approvals" for such intended use within a specified time. When the plaintiff realized it could not obtain the approvals within the time limit set forth in the contract, it notified the defendant seller that it would waive all contingencies and close the deal, whereupon the defendant terminated the contract and sold the land to a third party. In affirming the award of summary judgment in favor of the plaintiff purchaser, the Appellate Division, Fourth Depart-

ment, reasoned that because the contingency was for the "sole benefit" of the purchaser, it could be waived without the seller's consent. Since the purchaser "unequivocally waived the contingency" by notifying the seller of its intention to close before obtaining the mining approval permit, the seller had no right to cancel the contract *(Regional Gravel Prods. v Stanton, supra,* at 1079-1080).

## III

A significant predicate determination must be made by a court as to whether the particular contingency clause in question is for the benefit of the purchaser, the seller or both. In some cases, where there is no triable issue of fact, such as the instant case, this determination can be properly made by the court. This ruling is, in great part, a factual one which must be determined on a case-by-case basis. In some cases, a superficial review of the contract may suggest that a contingency clause is for the benefit of a particular party but, upon closer review of the facts, a factual issue may arise as to whether the other party might also benefit. For example, in *Poquott Dev. Corp. v Johnson* (104 AD2d 442), the sale was conditioned upon the purchaser securing final subdivision approval of eight lots which included two lots to be retained by the defendant sellers. This court held that this type of subdivision approval contingency was for the benefit of both parties, as follows: "While conditions relating to subdivision approval in a real estate contract are usually for the benefit of the purchaser, who can waive them if he so desires *(BPL Dev. Corp. v Cappel,* 86 AD2d 591; see *Poteralski v Colombe,* 84 AD2d 887), approval of the instant subdivision was for the benefit of the sellers as well since certain lots shown in the plat were to be retained by them. Thus, the condition relating to subdivision approval could not be waived unless both parties agreed (see *Matter of Marks,* 33 AD2d 1029; *Woodlark Constr. Corp. v Callahan,* 275 App Div 857; *1490 Realty Corp. v McCabe,* 77 NYS2d 482, *affd* 273 App Div 997, mot for lv to app den 274 App Div 782) or unless there was a waiver by conduct" *(Poquott Dev. Corp. v Johnson, supra,* at 443).

The same factual situation occurred in *Bonavita & Sons v Quarry* (126 AD2d 707), in which this court stated that "where * * * the seller is to retain one or more of the lots to be included in the subdivision, the condition may not be waived without the assent of the seller" *(Bonavita & Sons v Quarry,*

*supra,* at 708). Recently, in *Praver v Remsen Assocs.* (150 AD2d 540), this court held that a subdivision approval contingency clause which expressly provided that "the condition is solely for the benefit of the purchaser" was nevertheless for the benefit of both parties and could not be waived without the seller's consent because the seller had retained at least one of the lots to be included in the subdivision *(Praver v Remsen Assocs., supra,* at 541; *see also, S.J.E. Realty Corp. v Lantz,* — AD2d — [2d Dept, Oct. 16, 1989]; *Traister v Russo,* — AD2d — [2d Dept, Oct. 10, 1989]).

In the case of mortgage contingency clauses, this court has held that such clauses are generally for the benefit of both the purchaser and the seller. The purchaser obviously benefits since the mortgage commitment may be necessary in order to finance the purchase. On the other hand, the clause is also for the benefit of the seller who wants to limit the period of time in which the property is off the market. In addition, it is reasonable to infer that the seller would prefer the guaranteed financial commitment of a bank rather than the sometime uncertain personal financial obligation of a purchaser *(see, Ting v Dean,* — AD2d — [2d Dept, Dec. 4, 1989]). Where a mortgage contingency clause is for the benefit of both parties, it can be waived only by agreement between the parties or by conduct *(accord, Dale Mtge. Bankers Corp. v 877 Stewart Ave. Assocs.,* 133 AD2d 65 [mortgage contingency clause held to be for the benefit of both parties and could not be unilaterally waived by the purchaser]; *Ferlita v Guarneri,* 136 AD2d 680, 681 ["(t)his clause * * * was of sufficient moment to each side to justify an escape in the event the purchaser could not obtain (a mortgage)"]; *Ingber v Greco,* 135 AD2d 610, 611 ["this clause was for the benefit of both parties"]; *Koo v Gross,* 133 AD2d 613; *Kramer v Palnagio,* 128 AD2d 842, 843; *cf., Coneys v Game,* 141 AD2d 795 [the seller could not unilaterally cancel where the mortgage contingency clause provided that only the buyer could cancel]; *Grossman v Perlman,* 132 AD2d 522; *Castaldo v Dalmaziò,* 129 AD2d 548 [in both cases mortgage contingency clauses expressly permitting only the seller to cancel the agreement were enforced]).

In sum, a party for whose sole benefit a contingent provision is inserted in a contract—such as the plaintiff in this case—may waive that provision and purchase the property in an "as is" condition *(De Freitas v Holley,* 93 AD2d 852, 853, *supra).* Since the contingency provision relating to the "underlying action" was inserted in the contract solely for the purchaser's

benefit, it may timely waive that provision and purchase the property despite the continued pendency of the litigation and the encumbrance of the notice of pendency, without the consent of the seller.

## IV

■ While we can hypothesize factual situations wherein an "underlying action" contingency clause may be for the benefit of both parties, it is clearly not so in this case. Our review of the record reveals that although afforded the opportunity, the defendants sellers have failed to raise a triable issue as to the intended beneficiary of the contingency clause. The defendants' motion for summary judgment is supported solely by their attorney's affirmation. In opposition, Kenneth S. Weinstein, the plaintiff purchaser's vice-president, stated, in an affidavit dated September 22, 1987, that:

"The sale was not contingent on W.W.W. obtaining financing from any institutional lender. * * *

"I attended the Contract signing and participated in the negotiations. In negotiating the terms of the contract, GIANCONTIERI disclosed the existence of the underlying action. * * *

"In view of the fact that a Notice of Pendency was filed, W.W.W. (i) would have difficulty obtaining a construction loan from a lender that would be asked to extend financing for a development encumbered by the underlying action; and (ii) would have difficulty procuring title insurance to insure the construction lender's lien. Therefore, W.W.W. needed adequate protection in the contract in the event the underlying action was not concluded by a particular date. * * *

"*The provisions of Paragraph '31' were intended by the parties to benefit and protect W.W.W. in view of the pendency of the underlying action and the filing of a Notice of Pendency*" (emphasis supplied).

These significant factual assertions were not refuted by the defendants. Since the record is devoid of any evidence or logical reason that the contingency set forth in clause 31 was intended to benefit the defendants, but clearly reveals that the clause was inserted for the benefit of the plaintiff, it was entitled to waive the condition and request a closing. The plaintiff did so in its letter dated May 13, 1987. By failing to close as requested, the defendants breached the agreement

*(see, e.g., O'Connell v Clear Holding Co.,* 126 AD2d 530), and their motion for summary judgment should have been denied.

In view of this determination and the absence of any factual issues, we exercise our power to search the record on appeal with regard to this motion for summary judgment *(see,* CPLR 3212 [b]; *Vecchio v Lack,* 131 AD2d 465; *Schleich v Gruber,* 133 AD2d 224; *Fertico Belgium v Phosphate Chems. Export Assn.,* 100 AD2d 165). As stated by Judge Kaye in *Merritt Hill Vineyards v Windy Hgts. Vineyard* (61 NY2d 106, 111), the power of the Appellate Division to search the record is as follows: "Unlike [the Court of Appeals], which has no original jurisdiction over motions and limited authority to review facts, the Appellate Division is a division of the Supreme Court (see NY Const, art VI, §§ 4, 7) and shares that court's power to search the record and award summary judgment to a nonmoving party even where, as here, the nonmovant did not appeal".

Accordingly, in the absence of any triable issue, upon our search of the record, we grant summary judgment to the plaintiff directing specific performance of the contract dated October 16, 1986, for the purchase of the real property at issue.

BRACKEN, J. P., KUNZEMAN and EIBER, JJ., concur.

Ordered that the order and judgment (one paper) is reversed, on the law, with costs, the defendants' motion for summary judgment is denied, the complaint is reinstated, and, upon searching the record pursuant to CPLR 3212 (b), summary judgment is granted in favor of the plaintiff and against the defendants, and the matter is remitted to the Supreme Court, Suffolk County, for entry of an appropriate judgment in accordance herewith.