Oak Bee Corp., Appellant-Respondent, v N.E. Blankman & Co., Inc., Respondent-Appellant.

Second Department, February 20, 1990

## APPEARANCES OF COUNSEL

*Certilman Haft Balin Buckley Kremer & Hyman (David I. Rosenberg* and *Russell A. Blanck* on the brief), for appellant-respondent.

*Meyer, Suozzi, English & Klein, P. C. (Bernard S. Meyer* and *Brian Michael Seltzer* of counsel), for respondent-appellant.

## OPINION OF THE COURT

Per Curiam.

On this appeal, we are asked to determine whether a condition regarding preliminary subdivision approval, which was inserted in the parties' contract for the sale of real property, is for the benefit of only the plaintiff purchaser or for the mutual benefit of both parties. We find that the unusual circumstances of this case compel the conclusion that the condition inures to the benefit of both parties, and that

the defendant seller therefore was entitled to unilaterally cancel the agreement upon the failure of that condition.

The record reveals that on November 8, 1984, the parties entered into a contract whereby the defendant agreed to sell certain undeveloped real property situated in Suffolk County to the plaintiff for a purchase price of $3,550,000. The agreement provided for a closing date no later than November 7, 1986. The purchase price was payable in accordance with what the Supreme Court characterized as a "detailed financing scheme" involving a purchase-money mortgage to be held by the defendant. The record, including the contract, its various riders, and a letter agreement executed simultaneously with the contract, further demonstrates that the plaintiff contracted to purchase the property for the purpose of subdividing the parcel, located in three different building zones, into a cluster plan of 142 building units.

While the contract specified a purchase price of $3,550,000, the actual purchase price was to be determined by the density yield approved by specified governmental entities: according to "Rider I", if final subdivision approval as granted by the Planning Board was for more than 142 lots, and the parties "agree[d] to close title based on such approval", then the purchase price was to be increased by $25,000 for each lot in excess of 142, the cash payable at the closing was to increase by 25% of the additional amount, and the purchase-money mortgage was to increase by 75% thereof. According to the letter agreement executed with the contract, if the Planning Board, the County Health Department and the New York State Department of Environmental Conservation (hereinafter the DEC) did not grant subdivision approval for a cluster plan with a 142-lot density, the plaintiff agreed to accept a lot yield of a lesser amount, "but no less than 115 lots", in which event the purchase price "shall be as set forth in the contract, less $25,000 for each lot less than 142", with 25% of the reduction in the purchase price reflected in cash payable and 75% of that reduction reflected in the purchase-money mortgage. The letter agreement also afforded the plaintiff the option of electing "to accept the density of less than 115 building plots, but in no event shall the purchase price be less than $2,875,000.00" (i.e., the purchase price if the approved density yield was 115 lots). Hence, the defendant was entitled to insist on a purchase price which conformed with a density yield of at least 142 building lots, but could require the plaintiff to accept a lesser yield of at least 115 lots with a concomitant

price reduction, while the plaintiff could opt to accept a density yield of less than 115 lots.

By virtue of a rider to the contract, and in order to establish the permissible density, the defendant was required to submit immediately to the Planning Board of the governing municipality a map showing a density yield of "no less than" 142 building plots. Concurrently, the defendant was to submit applications to the DEC and the County Health Department, apparently in order to obtain some form of density approval. If preliminary approval for a cluster plan with a density yield of "at least 142 lots" was not forthcoming from these entities by July 7, 1985, then "either party" was afforded "the right" to cancel by serving written notice thereof on or before July 17, 1985. Likewise, the contract provision at issue in this case provided that if preliminary *subdivision* approval of a 142-lot cluster development was not obtained from these entities by February 7, 1986, either party had the right to cancel the contract by written notice served on or before February 17, 1986.

Although the defendant submitted a density yield map to the Planning Board and applications were filed with the DEC and the County Health Department, it became apparent before July 7, 1985, that approval of the cluster plan density would not be timely forthcoming. Accordingly, the plaintiff apparently waived the density approval requirement and the defendant did not attempt to exercise its right to cancel. However, when the plaintiff notified the defendant, by letter dated January 13, 1986, that the second requisite approval (i.e., preliminary subdivision approval) also would not be obtained by the contractual deadline date of February 7, 1986, and that it was waiving its option to cancel thereunder, the defendant elected to cancel the contract in a reply letter dated January 16, 1986.

This action by the plaintiff, *inter alia,* for specific performance ensued. The defendant thereafter moved and the plaintiff cross-moved for summary judgment. In an order dated June 1, 1987, the Supreme Court denied the respective motions, reasoning that while the condition of obtaining the requisite approvals was inserted in the contract for the benefit of both parties and could not be unilaterally waived, triable issues of fact existed with respect to whether the defendant diligently pursued and cooperated in the attempt to obtain the necessary approvals. We now reverse that order insofar as

cross-appealed from and grant the defendant's motion for summary judgment dismissing the complaint.

It is true, as the plaintiff contends, that conditions in a real estate contract relating to subdivision approval are generally for the benefit of the purchaser *(see, e.g., Laxrand Constr. Corp. v R.S.C.A. Realty Corp.,* 135 AD2d 685; *BPL Dev. Corp. v Cappel,* 86 AD2d 591), and that the party for whose benefit a condition is inserted in an agreement may waive the condition and accept performance as is *(see, Satterly v Plaisted,* 52 AD2d 1074, *after remand* 42 NY2d 933; *Weinprop, Inc. v Foreal Homes,* 79 AD2d 987; *see also, Regional Gravel Prods. v Stanton,* 135 AD2d 1079; *De Freitas v Holley,* 93 AD2d 852). However, where the relevant circumstances reveal that the condition has been inserted for the benefit of both parties to the agreement, either party may validly cancel the contract upon failure of the condition, and the condition may be waived only by the mutual assent of both parties *(see, e.g., Praver v Remsen Assocs.,* 150 AD2d 540; *Bonavita & Sons v Quarry,* 126 AD2d 707; *Poquott Dev. Corp. v Johnson,* 104 AD2d 442). The foremost guideline for determining whether a condition inures to the benefit of one party or of both parties "is the intent of the parties in including the contingency clause in the contract, as discerned from the language of the clause and the actual impact of the contingency" *(W.W.W. Assocs. v Giancontieri,* 152 AD2d 333, 334). A review of the record demonstrates that the condition of obtaining preliminary subdivision approval in this case was inserted in the agreement for the benefit of both parties, and the contract could therefore be unilaterally canceled by the defendant.

With regard to the language of the parties' agreement, "[i]t is well established that when the terms of a written contract are clear and unambiguous, the intent must be found therein * * *. Thus, in cases where the intention of the parties is expressed in plain and unambiguous terms, the question is one of law which may be decided on a motion for summary judgment" *(Holiday Mgt. Assocs. v New York Inst. of Technology,* 149 AD2d 462, 466). Here the contract unambiguously conferred on "either party" the right to cancel if, e.g., preliminary subdivision approval were not timely obtained, thereby affording the defendant the right to terminate the contract when it did *(cf., Holiday Mgt. Assocs. v New York Inst. of Technology, supra; Castaldo v Dalmazio,* 129 AD2d 548). Moreover, it is clear from the circumstances of this case that the parties inserted the subdivision approval condition, and the

concomitant cancellation provision, for their mutual benefit rather than solely for the plaintiff's benefit, inasmuch as subdivision approval of any given density not only affected the financing involved, but also determined the purchase price itself *(cf., Holiday Mgt. Assocs. v New York Inst. of Technology, supra)*. Accordingly, the plaintiff's purported unilateral waiver of the condition had no legal effect upon the defendant's contractually conferred right to cancel for failure of that condition.

■ We find unpersuasive the plaintiff's contention that the defendant, by electing to cancel in a letter dated January 16, 1986, some three weeks prior to the February 7, 1986 deadline for obtaining the approvals, is guilty of an anticipatory breach of contract. It is well settled that "[o]nce it becomes clear that one party will not live up to the contract, the aggrieved party is relieved from the performance of futile acts" *(Allbrand Discount Liqs. v Times Sq. Stores Corp.,* 60 AD2d 568; *see also, Sunshine Steak, Salad & Seafood v W.I.M. Realty,* 135 AD2d 891; *Ufitec, S. A. v Trade Bank & Trust Co.,* 21 AD2d 187, 190, *affd* 16 NY2d 698). The letter of the plaintiff dated January 13, 1986, which prompted the defendant's letter of cancellation, demonstrated that the requisite approvals would not be obtained by the contract deadline. Indeed, it provided that the plaintiff was waiving the condition "[s]ince it appears that the approvals * * * will not be obtained by February 7, 1986". Moreover, the existing circumstances made it quite obvious to both parties that the timely acquisition of preliminary subdivision approval was a virtual impossibility, as the governmental entities had not even issued any preliminary density yield approvals as of the date of cancellation. Hence, the overwhelming likelihood that the condition would not be timely satisfied, a circumstance conceded by the plaintiff, relieved the defendant of the futile act of waiting until the February 7, 1986 deadline to exercise its contractually conferred right of cancellation.

■ While the Supreme Court determined that an issue of fact existed as to whether the defendant diligently pursued a perceived obligation to obtain the necessary approvals by February 7, 1986, the record fails to sustain such a conclusion. The plaintiff has merely asserted vague and unsubstantiated claims of dilatory behavior on the defendant's part in seeking to secure the requisite approvals. Conversely, the affidavits and supporting documentation submitted by the defendant, including the sworn statements of engineers engaged by the

defendant to prepare and submit the various applications and forms for approval, establish that any delay was not occasioned by misconduct or bad faith on the part of the defendant. The record demonstrates that the defendant fulfilled all obligations imposed on it by the contract and the various riders, and there is no evidentiary indication that the defendant committed or failed to commit any act so as to frustrate the plaintiff's ability to perform *(cf., Ufitec, S. A. v Trade Bank & Trust Co.,* 21 AD2d 187, *affd* 16 NY2d 698, *supra)*. Accordingly, the orders entered June 1, 1987, and January 15, 1988, respectively, are affirmed insofar as appealed from, the order entered June 1, 1987, is reversed insofar as cross-appealed from, on the law, the defendant seller's motion for summary judgment is granted, the complaint is dismissed, and the cross appeal from the order entered January 15, 1988, is dismissed as academic, in light of the determination on the cross appeal from the order entered June 1, 1987.

MANGANO, J. P., KOOPER, SULLIVAN and HARWOOD, JJ., concur.

Ordered that the orders entered June 1, 1987 and January 15, 1988, respectively, are affirmed insofar as appealed from; and it is further,

Ordered that the order entered June 1, 1987 is reversed insofar as cross-appealed from, on the law, the defendant seller's motion for summary judgment is granted, and the complaint is dismissed; and it is further,

Ordered that the cross appeal from the order entered January 15, 1988 is dismissed as academic, in light of the determination on the cross appeal from the order entered June 1, 1987; and it is further,

Ordered that the defendant is awarded one bill of costs.